# IN THE SUPREME COURT OF IOWA

No. 07–0887

Filed September 3, 2010

**LYLE E. SCHNEIDER, PAUL S. KURTZ** and
**SHIRLEY J. KURTZ, GENE J. PETERS,**
**STERLING TOPS, INC., ROBERT W. BONORDEN**
and **DEANN M. BONORDEN, GERALD W. PETERSEN,**
**RICHARD R. KANE** and **DEBRA K. KANE,**
**MARK A. DOEPKE** and **MICHELLE L. DOEPKE,**
**GLORIA M. KNAPP FREILINGER, RUDY BUSCH**
d/b/a **RUDY'S SALES AND SERVICE, PAUL R. BEEM**
and **STACIE L. BEEM, DAVID J. FINK** and **DEB FINK,**
**DAVIK'S AUTO BODY/DENVER OIL COMPANY,**
**RANDALL-MARTA BENDER** d/b/a **BENDER**
**ENTERPRISES, INC., TOMMIE BRETTMANN**
d/b/a **DENVER MILL, BYRON D. DAVIS** and **JANE P.**
**DAVIS, DAVIS FARM AND AUTO, INC., WILLIAM**
**BUSS** d/b/a **DENVER CONSTRUCTION, INC.,** and
**MIKE WOOLDRIK,** as Executor of the Estate of
ROBERT WOOLDRIK,

      Appellants,

vs.

**STATE OF IOWA,**

      Appellee.

---

On review from the Iowa Court of Appeals.


Appeal from the Iowa District Court for Bremer County, Stephen P. Carroll, Judge.


Landowners appeal from a summary judgment in an action against the State alleging negligent design and construction of a highway project in a floodway. **DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**

John J. Hines of Dutton, Braun, Staack, Hellman, P.L.C., Waterloo, for appellants.

Thomas J. Miller, Attorney General, and Robin G. Formaker and Richard E. Mull, Assistant Attorneys General, for appellee.

**HECHT, Justice.**

Landowners sued the State of Iowa alleging its negligent design and construction of a highway project caused a flood and resulting damages. The State moved for summary judgment asserting the district court lacked subject matter jurisdiction over the claims of some of the plaintiffs who failed to exhaust their administrative remedies and advancing statutory immunities against all of the plaintiffs' claims. The district court granted the motion based on the State's statutory immunity for discretionary functions. The landowners appealed, and the court of appeals affirmed the district court's ruling. On further review, we conclude the defense of immunity for discretionary functions is not available to the State under the circumstances of this case. We vacate the decision of the court of appeals, affirm in part and reverse in part the district court's judgment, and remand for further proceedings.

## I. Factual Background and Proceedings.

When viewed in the light most favorable to the plaintiffs, the summary judgment record could establish the following facts. In the late 1980s, the Iowa Department of Transportation (DOT) developed a plan to relocate a portion of Highway 63 to bypass the city of Denver, Iowa. The plan called for the construction of a four-lane divided highway along the west side of the city and a bridge spanning Quarter Section Run Creek, a stream flowing through Denver. The original construction of the bypass project commenced in 1993 and concluded in 1994.

In a flood insurance study commissioned by the city in 1990, the creek was designated as a "regulatory floodway." A floodway " 'is the channel of a stream plus any adjacent flood plain areas that must be kept free of encroachment so that [a] 100-year flood can be carried

without substantial increases in flood heights.' "[1] *K & W Elec., Inc. v. State*, 712 N.W.2d 107, 110 (Iowa 2006) (quoting 1984 Federal Emergency Management Agency flood insurance study). The bridge and related structures were designed to accommodate a 50-year flood event.[2] The new bridge, consisting of twin structures 168 feet in length, spanned the creek, but not the entire floodway. The embankment constructed for the roadway encroached upon the floodway and impeded the drainage of water from it.

In May 1999, Denver experienced an extraordinary rain event and resulting flood which damaged thirty-five homes and thirty-four businesses. The intensity of the rain produced a volume of rainwater in the floodway consistent with the magnitude of a 250-year flood. A

---

[1] Iowa law prohibits the erection, use, or maintenance of a structure, dam, obstruction, deposit, or excavation in or on a floodway without a permit issued by the Iowa Department of Natural Resources (DNR). *See generally* Iowa Code § 455B.275 (2009). (Because there have been no amendments to the relevant statutory provisons, all citations will be to the 2009 Iowa Code unless otherwise noted.) The DNR assists communities in developing and administering local floodplain management programs and coordinates the National Flood Insurance Program. *See* National Flood Insurance Program Coordination/Local Floodplain Programs, http://www.iowadnr.gov/water/floodplain/nfip.html. At the time the bridge and related embankment structures were designed, the DOT was not aware that the regulatory floodway had been designated.

[2] As the project was planned for construction just outside the city limits before the floodway was designated, the DOT sized the bridge to comply with a Q50 (50-year flood) standard. A higher Q100 (100-year flood) standard was typically used by the DOT when sizing bridges in flood insurance study areas and in other locations where the risk of high damage would be created for upstream businesses and homes. The State's expert conceded the higher standard would have been utilized in the design of the bridge had it been designed for construction in a floodway, but noted the State did not learn the site had been designated as a floodway until after the bridge was built. The expert also acknowledged that if the State employees responsible for the design of the bridge had been aware the structure would be built in a floodway, applicable regulations would have required compliance with a Q100 standard. Under the Q100 standard, the bridge and related structures would have been designed to achieve a no-rise condition on insurable structures in Denver upstream from the bypass for a 100-year flood. In other words, the bridge would have been designed so that it would not cause insurable structures upstream from the bridge to experience an increase in the depth of floodwaters as a consequence of a 100-year flood event.

resource assessment and flood study undertaken by the United States Department of Agriculture Natural Resources Conservation Service concluded the embankment constructed for the bypass "cut[] off a large portion of the floodway," causing water moving through it to "back up" during the 1999 event. Computer models prepared for the study illustrated that the bypass structures increased the depth of the 1999 flood waters by as much as three feet in certain areas of the city and caused flooding in a part of the city that would not have flooded but for the construction of the bypass. The models also produced evidence tending to prove the bridge and related structures would have caused flood waters in a 100-year flood event to rise higher in some parts of Denver upstream from the bridge than would have been the case had the bridge and related structures not been placed in the floodway.

In the aftermath of the flood, the city formed a task force to explore potential remedial measures to diminish the risk of future flooding. Following a lengthy period of study and investigation of a range of options, the State chose to redesign and extend the bridge. The reconstruction of the bridge and the reconfiguration of the floodway in 2004 and 2005 modified the elevation of the floodway along the creek and substantially enhanced the capacity of the floodway to convey water away from the city. The summary judgment record includes testimony and an affidavit of the State's expert tending to prove the reconstruction brought the bridge and related structures[3] into substantial compliance with the Q100 standard.[4]

---

[3]For ease of reference, we will refer to the bridge and related structures, including the original twin structures spanning the creek, the embankment, the reconstructed bridge, and the reconfiguration of the floodway, as "the bridge."

[4]The expert acknowledged that even after the reconstruction of the bridge and reconfiguration of the elevation in parts of the floodway, the State did not achieve a no-rise condition for all upstream properties in Denver. However, the State received DNR

Owners of several properties damaged in the 1999 flood filed suit alleging the State negligently designed and constructed the bridge. The landowners alleged the State breached a common-law duty by designing and constructing the bridge in a manner that obstructed the floodway and increased the depth of floodwater during the 1999 event.[5] The landowners further alleged the State breached a duty derived from Iowa Code section 314.7 proscribing disruption of the natural drainage of surface water when improving or maintaining a highway. The State's answer asserted immunity from liability under Iowa Code section 669.14 because the design and construction of the project were discretionary functions and because the project conformed with a generally recognized engineering or safety standard, criteria, or design theory prevailing at the time of its design and construction or reconstruction.

The State filed a motion for summary judgment asserting the district court lacked subject matter jurisdiction over the cases of some of the plaintiffs who, after filing their claims with the state appeal board as required under Iowa Code chapter 669, failed to respond to the attorney general's requests for additional information and documentation of the claims. The motion also sought summary judgment in the State's favor as to all of the plaintiffs' claims based on the immunity defenses asserted in the answer. The district court concluded it had subject matter jurisdiction because the plaintiffs' administrative filings were minimally

approval for the reconstruction because the State obtained easements from the owners of some of those properties and there are no insurable structures on the others.

[5]The landowners claim regulations controlling the construction of floodway obstructions at the time the by-pass project was designed and constructed prescribed a pertinent standard of care. This standard dictated that obstructions of a floodway must not increase the floodwaters for upstream structures in the event of a 100-year flood and is described in the summary judgment papers as a "no-rise standard." The extent to which the original by-pass project deviated from this standard is disputed by the parties.

sufficient to achieve exhaustion, but granted the motion, reasoning the State is immune under Iowa Code section 669.14(1) from liability to the plaintiffs because the design and construction of the bypass were discretionary functions based on "considerable planning" and a "balancing of governmental priorities and competing governmental demands." The district court further concluded the State was entitled to summary judgment on the plaintiffs' claims for damages for permanent devaluation of their properties under section 669.14(8) because the bridge was constructed or reconstructed in accordance with a generally recognized engineering or design theory. The summary judgment ruling also rejected the plaintiffs' legal theory that the construction of the bridge diverted the natural flow of water and caused the 1999 flooding in violation of Iowa Code section 314.7.

The landowners appealed, contending the district court erred in granting summary judgment in favor of the State based on the discretionary immunity and state-of-the-art defenses. The landowners further challenged on appeal the district court's determination that they failed to engender a fact question in the summary judgment record as to whether the State violated Iowa Code section 314.7 in the course of the design and construction of the bridge. We transferred the appeal to the court of appeals.

The court of appeals affirmed the summary judgment in favor of the State on the ground that the plaintiffs' claims are barred because they are based upon the negligent exercise or performance of a discretionary function or duty by a State agency or employee under section 669.14(1). We granted further review to determine whether the State's immunity for discretionary functions is applicable under the circumstances presented in this case.

## II. Scope of Review.

We review for correction of errors at law a district court's ruling granting a motion for summary judgment. *Kolarik v. Cory Int'l Corp.*, 721 N.W.2d 159, 162 (Iowa 2006). We examine the record to determine whether a material fact is in dispute. *Robinson v. Fremont County*, 744 N.W.2d 323, 325 (Iowa 2008). In performing this function, we " 'view the entire record in a light most favorable to the nonmoving party [and] indulge in every legitimate inference that the evidence will bear' in favor of the nonmoving party." *Cubit v. Mahaska County*, 677 N.W.2d 777, 779 (Iowa 2004) (alteration in original) (quoting *Crippen v. City of Cedar Rapids*, 618 N.W.2d 562, 565 (Iowa 2000)). We also review for correction of errors at law the district court's interpretation of the applicable statutes. *In re Inspection of Titan Tire*, 637 N.W.2d 115, 128 (Iowa 2001).

## III. Discussion.

**A. Subject Matter Jurisdiction.** As we have noted, the district court rejected the State's contention that some of the plaintiffs failed to exhaust their administrative remedies. The State again raises the exhaustion doctrine on appeal, contending the summary judgment against those plaintiffs must be affirmed even if the immunity defenses are without merit because the district court lacked subject matter jurisdiction. We shall therefore first address the jurisdictional question.

Each of the plaintiffs filed a claim on a form promulgated by the state appeal board. *See* Iowa Code § 669.3 (authorizing the state appeal board to "adopt rules and procedures for the handling, processing, and investigation of claims" against the State). The claim forms filed by the plaintiffs on May 15, 2001, disclosed the amount of each claim for property damage and generally described the legal theories asserted against the State. Several weeks later, a claims manager employed by

the State sent a letter to the plaintiffs' counsel requesting supporting documentation for the claims. A second letter was sent by the claims manager to the plaintiffs' counsel on April 24, 2002, citing Iowa Administrative Code rule 543—1.4.[6] This letter noted no supporting documentation had been supplied for a majority of the plaintiffs' claims, and asserted only "conclusory" information had been provided in support of the others. The claimants did not supply the additional information requested by the State's claims manager.

On August 5, 2004, a special assistant attorney general sent letters to the plaintiffs' counsel announcing the appeal board's decision to deny all of the claims. The letters informed each claimant that "after considering the facts and circumstances forming the basis of [the] claim[s]," the state appeal board had "made a final determination to deny payment."

The plaintiffs filed suit alleging tort claims against the State. Contending certain plaintiffs who failed to supply information required by the state appeal board's administrative rules had failed to exhaust administrative remedies, the State's motion for summary judgment

---

[6]Rule 543—1.4(4) promulgated by the state appeal board and in effect at the time the plaintiffs' claims were filed provides:

All claims shall set forth information as follows:
. . . .
*b.* Other property.
(1) Nature and description of such other property or items of property separately listed.
(2) Method by which such property was acquired. If purchased, then the name of the person or place from which purchased, the price, date and usage made of the property.
(3) Depreciated value at date of damage or loss.
(4) Costs estimates for repairs or actual costs thereof with copies of cost estimates made or of bills paid.
(5) Names and addresses of any and all persons having personal knowledge of any facts relating to the claim.

Iowa Admin. Code r. 543—1.4(4)(*b*).

challenged the district court's subject matter jurisdiction over the claims of those plaintiffs.[7] The district court rejected the State's jurisdictional challenge, concluding the plaintiffs' claims submissions included "sufficient notice of the nature and cause of the damages sought, along with a certain statement of the value of the damages" and were minimally adequate in this case to achieve exhaustion of the administrative remedy.

The filing of a claim with the state appeal board is a prerequisite to suit under the Iowa Tort Claims Act. *See* Iowa Code § 669.5 (providing suit against the State is not permitted until the attorney general has made final disposition of a claim). We have characterized this claim process as an "administrative remedy" that must be exhausted. *Swanger v. State*, 445 N.W.2d 344, 347 (Iowa 1989). The process "is intended to allow a prompt investigation of claims against the State and facilitate an early settlement when possible." *In re Estate of Voss*, 553 N.W.2d 878, 881 (Iowa 1996). "[T]he doctrine of exhaustion may be invoked where tort claimants have not properly submitted their claims to the [appeal] board for consideration and disposition." *Swanger,* 445 N.W.2d at 347. "Exhaustion of the administrative process is jurisdictional, and a suit commenced without complying with this process is subject to dismissal." *Id.* We have noted that the doctrine requiring a plaintiff to exhaust administrative remedies "is designed to promote orderly procedures within the judicial system by requiring a preliminary administrative sifting process." *Charles Gabus Ford, Inc. v. Iowa State Hwy. Comm'n*, 224 N.W.2d 639, 648 (Iowa 1974). Courts employ the doctrine, "a product of the exercise of judicial restraint," as a means of "withholding

---

[7]The State's jurisdictional challenge was raised against only those plaintiffs who supplied no documentation supporting their written claim forms.

judicial action until the administrative process has been undertaken and has run its entire course." *Id.*

Each of the plaintiffs in this case filed an administrative claim on a form promulgated by the appeal board. The question presented in this case is whether those plaintiffs who thereafter declined the board's request for additional documentation failed to exhaust the available administrative remedy and thereby deprived the district court of subject matter jurisdiction. Although some of the plaintiffs failed to submit any documentation to augment their administrative claim forms, and others submitted documentation the State's claims manager deemed conclusory, each of the challenged claims disclosed the type of claim (tort) asserted, stated the amount of property damage claimed, and provided a general statement of the relevant legal theory supporting it. If the board believed evaluation of any of the claims could not be completed without access to additional documentation mandated by the appeal board's rule, the board had a remedy readily available to it. Under the appeal board's rule 543—1.7, a special assistant attorney general is directed to investigate claims filed with the board. Iowa Admin. Code r. 543—1.7. The special assistant attorney general is authorized under the rule to administer oaths; take testimony in the form of affidavits, depositions or interrogatories; and seek contempt orders in furtherance of the investigation of claims. *Id.* If the board or its representatives believed they could not approve or deny any of the plaintiffs' claims on the information supplied, they could have sought to compel the production of documentation under the board's rule. Notwithstanding the availability of these means of inducing the plaintiffs to provide supporting documentation, the appeal board elected to make a final

administrative determination on all of the plaintiffs' claims.[8] Under these circumstances, we conclude the board had available to it the information it believed it needed to make its administrative determination. As the board made a final determination on all of the plaintiffs' claims, we believe the administrative process ran its course. *See Charles Gabus*, 224 N.W.2d at 648. Under the circumstances presented here, invocation of the exhaustion doctrine is not required to avoid interference with the administrative process. The district court correctly concluded it had subject matter jurisdiction over all of the plaintiffs' claims.

**B. Discretionary Function Immunity.** The Iowa Tort Claims Act prescribes procedures governing tort claims against the State for the negligent acts of its officers, agents, or employees. *See generally* Iowa Code ch. 669. The Act preserves, by excepting certain claims from its scope, aspects of sovereign immunity. Among the excepted claims are those "based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a state agency or an employee of the state, whether or not the discretion be abused." Iowa Code § 669.14(1). As the immunity for discretionary functions in our statute has its genesis in the federal tort claims act, we have been

---

[8]We note that the board's letters to the plaintiffs' counsel denied all of the claims—those for which some supporting documentation was provided and those for which no supporting documentation was provided—for the same reason. The letters uniformly announced that "after considering the facts and circumstances forming the basis of [the plaintiff's] claim and the applicable law, [the board] has made a final determination to deny payment of this claim." Thus, the board's explanation for the denial of the claims appears to have rested on liability considerations rather than the plaintiffs' failure to sufficiently document their claims. *See Allendorf v. Langman Constr., Inc.*, 539 N.W.2d 370, 372 (Iowa 1995) (noting a similarly worded denial letter "purport[ed] to have been based on a consideration of the liability issues" and concluding plaintiff's failure to demand a sum certain in his administrative claim did not defeat the court's subject matter jurisdiction).

guided by federal decisions applying the doctrine. *Shelton v. State*, 644 N.W.2d 27, 30 (Iowa 2002).

We apply a two-part test in determining whether section 669.14(1) shields the State from liability. *Id.* at 29. First, the State must show there was an element of judgment or discretion involved in the design or construction of the bypass project. *Graber v. City of Ankeny*, 656 N.W.2d 157, 161 (Iowa 2003). If judgment or discretion was involved in the design or construction of the project, the State must show the judgment or discretion was of the type the legislature intended to shield from liability. *Messerschmidt v. City of Sioux City*, 654 N.W.2d 879, 881 (Iowa 2002).

The State asserts decisions requiring judgment and discretion were made throughout the duration of the project, beginning at the time the bypass was first conceived. Hearings were held to solicit public input as to whether the project should be undertaken in view of its expected cost and its relative priority in relationship to other projects throughout Iowa's statewide primary highway system. Numerous other decisions were required in the design and planning of the project, including most notably the route the roadway should take around the city and the proper design and location of the bridge over the creek. The plaintiffs contend, however, that the discretionary function doctrine has no application in this case because the State had no discretion or choice in determining whether the bridge could be designed and built to encroach on the floodway. We agree.

Iowa Code section 455B.275(1) prohibits all floodway obstructions or encroachments, including fill, new construction, or any development within a floodway without the approval of the DNR. This statutory prohibition of floodway encroachments advances the General Assembly's

policy determination that "the protection of life and property from floods . . . is of paramount importance to the welfare and prosperity of the people of the state." Iowa Code § 455B.262(1). In furtherance of this broad statement of policy, certain activities are expressly prohibited in a floodway or flood plain. A civil penalty of $500 per day may be imposed against those who erect, use, or maintain structures adversely affecting the efficiency, or unduly restricting the capacity, of a floodway without the permission of the DNR. Iowa Code §§ 455B.275(1), 455B.279(2).

The State asserts, however, the plaintiffs did not cite chapter 455B in the district court proceedings and failed to preserve error on this point. While the plaintiffs concede they did not cite the provisions of chapter 455B in support of their resistance to the State's motion for summary judgment, they did cite and attach to their resistance an analogous federal regulation, 44 C.F.R. § 60.3(d)(3) (prohibiting encroachments including fill, new construction, substantial improvements and other development within the adopted regulatory floodway unless it has been demonstrated that the proposed encroachment would not result in any increase in flood levels).

We are persuaded the plaintiffs preserved this subject for appellate review by citing the corollary federal regulation and by including in the summary judgment record an email message authored by the State's expert acknowledging that "[t]he construction of the bypass in 1993 encroached upon the established floodway," "increased the 100 year flood elevations both upstream and downstream of the bypass project," and constituted "a violation of FEMA and DNR regulations." The district court's conclusion that the design and construction of the bypass within the floodway constituted discretionary functions supporting a claim of immunity under section 669.14(1) implicitly rejected the plaintiffs' claim

that the State had no discretion to design and build the bridge in the floodway in violation of state and federal law. Having determined the issue was preserved for our review, we proceed to a discussion of the merits of the issue.

Given the clear statutory and regulatory prohibitions against the creation of floodway encroachments causing increased risk of loss to upstream properties in the event of a 100-year flood, we conclude the discretionary function defense has no application in this case. The State's employees could not choose to ignore these prohibitions, and they therefore did not have available to them a choice to design and build encroaching, noncompliant structures in the floodway. As there was no such choice available, the employees of the State who designed and built the bridge did not perform discretionary functions for which section 669.14(1) would offer immunity. *See United States v. Gaubert*, 499 U.S. 315, 324, 111 S. Ct. 1267, 1274, 113 L. Ed. 2d 335, 347 (1991) (stating the discretionary function doctrine offers the government no shelter from liability arising from its employee's violation of a "mandatory regulation"); *Berkovitz v. United States*, 486 U.S. 531, 536, 108 S. Ct. 1954, 1958–59, 100 L. Ed. 2d 531, 540–41 (1988) (stating "the discretionary function exception will not apply when a . . . statute, regulation, or policy specifically prescribes a course of action for [a government] employee to follow").

Accordingly, we conclude the district court erred in concluding the State is entitled to immunity under section 669.14(1).

**C. Design and Construction Immunity**. Having concluded the discretionary function defense under Iowa Code section 669.14(1) is not available to the State under the circumstances of this case, we next consider whether the district court erred in concluding an alternative

statutory immunity is available to the State in this case. The State's sovereign immunity is also preserved for

> [a]ny claim based upon or arising out of a claim of negligent design or specification, negligent adoption of design or specification, or negligent construction or reconstruction of a highway . . . that was constructed or reconstructed in accordance with a generally recognized engineering or safety standard, criteria, or design theory in existence at the time of the construction or reconstruction.

Iowa Code § 669.14(8). This statute establishes a state-of-the-art defense against ordinary negligence claims arising from the design and construction of highways and roads. *K & W Elec.*, 712 N.W.2d at 113.

The State supported its motion for summary judgment in this case with the affidavit of an engineer whose responsibility includes the design of the State's bridges. The affiant opined the State's reconstruction of the bridge and floodway elevations after the 1999 flood (1) eliminated the risk that the plaintiffs will experience future flooding as a consequence of a flood having a magnitude not greater than a 100-year flood and (2) was accomplished in accordance with generally accepted engineering criteria existing at the time of the reconstruction. The plaintiffs offered no evidence rebutting these expert opinions, and the district court granted the State's motion "on the issue of permanent devaluation" of the plaintiffs' properties.[9]

---

[9]We interpret this aspect of the district court's summary judgment ruling as an adjudication of only part of the plaintiffs' damage claims. The ruling rejected the plaintiffs' claims that the State's negligence caused a "permanent devaluation" of their real estate, concluding the uncontroverted summary judgment record established that the reconstruction of the bridge eliminated the risk of future flood damage in the event of a 100-year flood and thus brought the project in compliance with the engineering standard prevailing at the time of the reconstruction. The summary judgment ruling did not, however, adjudicate as a matter of law the plaintiffs' claims for other damages alleged by the plaintiffs to have been caused by the State's negligence, if any, in the original design and construction of the project. The State's defense under section 669.14(8) will not defeat the plaintiffs' claims for damages suffered by the plaintiffs before the reconstruction of the bridge if the plaintiffs prove (1) the State breached a

The plaintiffs contend on appeal the State is not entitled to immunity under section 669.14(8) because the bridge still encroaches on the floodway even after the reconstruction. This contention, standing alone, is insufficient to preclude summary judgment because the uncontroverted summary judgment record demonstrates the reconstruction design satisfied the Q100 design standard and achieved the approval of the DNR. The plaintiffs failed at the summary judgment stage to produce evidence tending to prove the reconstructed bridge does not comply with the Q100 standard, the generally accepted engineering standard in existence at the time of the reconstruction.

Whether the plaintiffs' negligence claims are based on an alleged breach of a common-law duty to exercise reasonable care in the design and construction of the bridge, or an alleged breach of Iowa Code section 455B.275(1) and related state or federal regulations proscribing the erection of obstructions in floodways, they are based upon or arise out of the design or construction of a highway. The state-of-the-art defense applies to all such claims. We therefore find no error in the district court's summary judgment determination that the plaintiffs' claims for permanent devaluation are barred by Iowa Code section 669.14(8). Accordingly, we affirm the district court's determination that the State established its immunity defense under section 669.14(8) against the "permanent devaluation" damage claims of plaintiffs who did not sell their properties prior to the reconstruction of the bypass bridge.[10]

_____

common law or statutory duty and (2) such damages are within the relevant scope of liability.

[10]A fact issue remains for trial on the question of whether the original design and construction of the bridge as a floodway encroachment violated prevailing engineering standards in existence at the time of the original design and construction of the project. As we have noted, our affirmance of the district court's ruling as to the State's immunity for permanent devaluation of the plaintiffs' properties under section 669.14(8) preserves for trial the plaintiffs' claims for other pre-reconstruction damages

**D.** **Liability Under Section 314.7**. Iowa Code section 314.7 provides in relevant part:

> Officers, employees, and contractors in charge of improvement or maintenance work on any highway shall not . . . turn the natural drainage of the surface water to the injury of adjoining owners. It shall be their duty to use strict diligence in draining the surface water from the public road in its natural channel. To this end they may enter upon the adjoining lands for the purpose of removing from such natural channel obstructions that impede the flow of such water.

Iowa Code § 314.7.

The plaintiffs' petition alleged in part that the State's "highway construction activities were carried out in violation of section 314.7 in that the construction changed the natural drainage of the surface water" and damaged the plaintiffs' property. The State requested summary judgment as to this legal theory, positing the plaintiffs produced no evidence supporting a finding that the flood waters affecting their properties were diverted from the surface of the road. The district court concluded our decision in *Connolly v. Dallas County*, 465 N.W.2d 875 (Iowa 1991), permitted a finding of liability against the State under section 314.7 only if the flood water was diverted from the surface of the roadway to the plaintiffs' property. Finding no evidence in the record supporting a determination that the floodwater affecting the plaintiffs' property was diverted from the roadway, the district court granted summary judgment in favor of the State on this issue.

---

which were not adjudicated by the summary judgment ruling. The plaintiffs' appeal brief asserts two of the plaintiffs sold their properties and suffered the economic loss occasioned by the flood-related dimunition in value prior to the reconstruction. Our decision also leaves for determination by the fact finder the question of whether these two plaintiffs suffered such a loss within the scope of liability when they sold their properties.

The plaintiffs contend the district court's flawed understanding of *Connelly* led to an incorrect interpretation of section 314.7. We agree. The plaintiffs in *Connelly* sued Dallas County, alleging the removal of a bridge abutment and the widening of a creek channel in the course of the reconstruction of a secondary highway caused flood damage. 465 N.W.2d at 876. The plaintiffs in that case based their claim for damages on an alleged violation of the common-law duty owed by an upstream or dominant riparian owner to a downstream or servient owner to protect the status quo. *Id.* at 877. Although the plaintiffs in *Connelly* did not allege the county had violated section 314.7 in diverting flood water to their property, we made passing reference to the statute in a footnote as we distinguished *Rosendahl Levy v. Iowa State Highway Commission*, 171 N.W.2d 530 (Iowa 1969), a case in which the statute was applied. *Id.* at n.2. The passing reference suggested in dicta that section 314.7 "regulated diversion of water from roadways" and noted there was no evidence in *Connelly* that the flooding "was in any way due to waters diverted from a public roadway." *Id.* The clear language of section 314.7 imposes on those who undertake highway improvements a duty to use strict diligence in draining surface water from the road to its natural channel in conformity with general riparian principles. The statute also separately and more broadly proscribes "turn[ing] the natural drainage of the surface water to the injury of adjoining owners" as they improve or maintain any highway. This proscription clearly addresses more than water from the surface of the roadway and mandates that road improvement projects shall not divert the natural drainage of water in the vicinity of a road improvement project. We therefore disavow the dicta in *Connelly* insofar as it may be interpreted to confine the reach of

section 314.7 to only the diversion of water from the surface of a roadway.

The plaintiffs' failure to present evidence that they were damaged exclusively or even primarily by water diverted from the surface of the roadway does not vitiate their broader claim under section 314.7. The summary judgment record viewed in the light most favorable to the plaintiffs includes evidence tending to prove the construction of the bridge obstructed the natural flow of water through the floodway and thus changed the natural drainage of surface waters to the detriment of upstream landowners. Accordingly, the district court erred in concluding the plaintiffs failed to engender a fact question as to the State's liability under section 314.7.

Although we have concluded a fact question exists as to whether the State violated section 314.7, the practical significance of this determination in the final analysis may be slight. The State contends the defense under Iowa Code section 669.14(8) is available against negligence claims based on violations of a statutory duty derived from section 314.7. We agree. *See K & W Elec.*, 712 N.W.2d at 115. Accordingly, the district court's ruling granting the State's summary judgment motion on the plaintiffs' other negligence theories applies coextensively to their claims for permanent property devaluation based on the alleged violation of section 314.7.

**IV. Conclusion**.

We conclude the district court correctly concluded it had subject matter jurisdiction because the plaintiffs exhausted their administrative remedy. The district court erred, however, in granting summary judgment in favor of the State based on the defense of discretionary immunity under section 669.14(1). The district court also erred in

concluding the plaintiffs' claim based on the alleged violation of section 314.7 must fail as a matter of law because the plaintiffs failed to present evidence supporting a finding that the flood water was diverted to their properties from the surface of the roadway. We affirm the district court's summary judgment determination that the negligence claims for permanent devaluation of the plaintiffs' properties based on alleged violations of common-law and statutory duties are barred by the state-of-the-art defense under Iowa Code section 669.14(8) because the uncontroverted record establishes the bridge was reconstructed in compliance with an engineering standard prevailing at the time of the reconstruction. Our affirmance of the summary judgment ruling leaves standing the plaintiffs' claims for other damages sustained prior to the reconstruction of the bridge. We therefore vacate the decision of the court of appeals, affirm in part and reverse in part the judgment of the district court, and remand for further proceedings consistent with this decision.

**DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**