# IN THE COURT OF APPEALS OF IOWA

No. 14-2110
Filed January 13, 2016

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**NICHOLAS DANIEL COHRS,**
        Defendant-Appellant.
_____

Appeal from the Iowa District Court for Chickasaw County, George L. Stigler, Judge.

The defendant appeals from the district court's denial of his pro se motion to correct an illegal sentence. **AFFIRMED.**

Mark C. Smith, State Appellate Defender, and Shellie L. Knipfer and Rachel C. Regenold (until withdrawal), Assistant Appellate Defenders, for appellant.

Thomas J. Miller, Attorney General, and Bridget A. Chambers, Assistant Attorney General, for appellee.

Considered by Danilson, C.J., and Mullins and McDonald, JJ.

**DANILSON, Chief Judge.**

Nicholas Cohrs appeals from the district court's denial of his pro se motion to correct an illegal sentence. Cohrs maintains he was entitled to receive the assistance of appointed counsel because his motion to correct an illegal sentence was a critical stage of the criminal proceeding. He also maintains the imposition of the lifetime special sentence was grossly disproportionate to his crime and asks that we vacate his sentence and remand to the district court for a hearing on the matter.

Because Cohrs did not request that counsel be appointed at the district court level and the district court did not appoint counsel on its own motion, we decline to consider whether he had a statutory right to have counsel appointed because error was not preserved. We find that Cohrs did not have a constitutional right to be appointed counsel for his motion to correct an illegal sentence under the Federal Constitution, and we decline to interpret the Iowa Constitution to provide greater protections. Lastly, the imposition of the lifetime special sentence was not cruel and unusual. We affirm the district court's denial of Cohrs' motion to correct an illegal sentence.

**I. Backgrounds Facts and Proceedings.**

On December 18, 2006, Cohrs was charged by trial information with sexual abuse in the third degree, in violation of Iowa Code sections 709.1 and 709.4 (2005). Cohrs entered a plea agreement with the State and ultimately pled guilty to sexual abuse in the third degree, pursuant to sections 709.1 and

709.4(2)(c)(4). He was sentenced to a term of incarceration not to exceed ten years as well as a lifetime special sentence.[1] Cohrs did not file a direct appeal.

On October 30, 2014, Cohrs filed a pro se motion to correct an illegal sentence, arguing that the special sentence was cruel and unusual. The State filed a resistance to the motion.

On December 4, 2014, the district court denied the motion without a hearing on the matter. Cohrs appeals.

## II. Standard of Review.

Cohrs maintains he has a constitutional and statutory right to counsel for his motion to correct an illegal sentence. A claim implicating a constitutional right is reviewed de novo. *State v. Lyman*, 776 N.W.2d 865, 873 (Iowa 2010). Insofar as his claim is based on statute, we review for corrections of errors at law. *See Schneider v. State*, 789 N.W.2d 138, 144 (Iowa 2010).

---

[1] The special sentence was passed in the 2005 legislative session and went into effect June 14, 2005. 2005 Iowa Acts ch. 158, § 39 (codified at Iowa Code § 903B.1 (2007)). The section provides:

> A person convicted of a class "C" felony or greater offense under chapter 709, or a class "C" felony under section 728.12, shall also be sentenced, in addition to any other punishment provided by law, to a special sentence committing the person into the custody of the director of the Iowa department of corrections for the rest of the person's life, with eligibility for parole as provided in chapter 906. The special sentence imposed under this section shall commence upon completion of the sentence imposed under any applicable criminal sentencing provisions for the underlying criminal offense and the person shall begin the sentence under supervision as if on parole. The person shall be placed on the corrections continuum in chapter 901B, and the terms and conditions of the special sentence, including violations, shall be subject to the same set of procedures set out in chapters 901B, 905, 906, and chapter 908, and rules adopted under those chapters for persons on parole. The revocation of release shall not be for a period greater than two years upon any first revocation, and five years upon any second or subsequent revocation. A special sentence shall be considered a category "A" sentence for purposes of calculating earned time under section 903A.2.

Cohrs maintains the special sentence was cruel and unusual in violation of the Eighth Amendment of the United States Constitution and article 1, section 17 of the Iowa Constitution. We review constitutional claims de novo. *State v. Oliver*, 812 N.W.2d 636, 639 (Iowa 2012).

**III. Discussion.**

**A. Error Preservation.**

Cohrs maintains he has a statutory right to counsel for his motion to correct an illegal sentence. The State contends Cohrs waived any statutory right by failing to invoke it in the district court.

The statutory right requires either the court to exercise its discretionary right to appoint counsel on its own motion or the defendant or someone on his behalf to make such a request. *See* Iowa Code § 815.10(1)(a) (2013). Here, Cohrs made no request for counsel, and the court did not appoint counsel on its own motion. The statutory right to counsel was not invoked until the appellate level had been reached.

Cohrs relies on *State v. Alspach*, 554 N.W.2d 882, 883 (Iowa 1996), for his contention that he has a statutory right to counsel for a motion to correct a sentence. In *Alspach*, the court acknowledged that the "right to counsel extends to the sentencing proceedings." 554 N.W.2d at 883. However, *Alspach* is a restitution case and can be differentiated from the case at hand. *Id.* The restitution sentencing provision of the order had been left open in *Alspach* until the amount of restitution had been determined. *Id.* at 882–83. Here, the application of section 903B.1 was immediately set out in the sentencing order. Furthermore, in the *Alspach* case a request for counsel was made, which

invoked the statutory right. *Id.* at 882. Again, Cohrs made no such request until the appellate level was reached.

Because Cohrs did not request that counsel be appointed at the district court level and the district court did not appoint counsel on its own motion, this is the first time the issue is being considered. The issue may not be raised for the first time on appeal, and we decline to consider it. *See DeVoss v. State*, 648 N.W.2d 56, 63 (Iowa 2002).

### B. Constitutional Right to Counsel.

Cohrs maintains that a motion to correct an illegal sentence is a critical stage of the trial proceedings and therefore he has a constitutional right to counsel. We do not have the same issues with error preservation as considered above because, if Cohrs has a constitutional right to counsel, the right attaches immediately and even without request, and the right exists until waived. *See Hannan v. State*, 732 N.W.2d 45, 52 (Iowa 2007).

In considering the federal constitutional right to counsel, our supreme court has noted that "the right to appointed counsel for a convicted criminal extends only to the first appeal of right." *Fuhrmann v. State*, 433 N.W.2d 720, 722 (Iowa 1988); *see also Pennsylvania v. Finley*, 481 U.S. 551, 556 (1990) ("Our cases establish that the right to appointed counsel extends to the first appeal of right, and no further. Thus, we have rejected suggestions that we establish a right to counsel on discretionary appeals.") The constitutional right to counsel does not apply to collateral issues that long ago became final. *Fuhrmann*, 433 N.W.2d at 722. Cohrs did not file his motion to correct his sentence until after the time to file an appeal had lapsed. *See* Iowa R. App.

P. 6.101(1)(b) ("A notice of appeal must be filed within 30 days after the filing of the final order or judgment."). Cohrs' requested relief was made under Iowa Rule of Criminal Procedure 2.24(1) and (5) to correct what he perceives to be an illegal sentence.[2] In *Fuhrmann,* the requested relief was made using our postconviction-relief procedure, but there is no reason to differentiate the application of one's constitutional right to counsel based on the procedure used to request the collateral relief sought. *See* 433 N.W.2d at 721–22. Moreover, Iowa Rule of Criminal Procedure 2.27(3)(b) provides that a "defendant's presence is not required at a reduction of sentence under rule 2.24." We do not believe the defendant's presence could be waived at a critical stage of trial.

Cohrs contends that the right to counsel as expressed in the Iowa Constitution should be interpreted more expansively than the right to counsel under the United States Constitution. The *Fuhrmann* court did not do so. *Id.* at 722 ("Indeed the United States Supreme Court has clearly announced the right to appointed counsel for a convicted criminal extends only to the first appeal of right, not to a collateral appeal on a conviction that has long since become final upon the exhaustion of the appellate process. We would construe our own constitution likewise." (internal citation omitted)). Further, Cohrs does little more than cite the language of the Iowa Constitution. We do not interpret a provision

---

[2] Iowa Rule of Criminal Procedure 2.24(1) and (5) provide:

2.24(1) *In general.* Permissible motions after trial include motions for new trial, motions in arrest of judgment, and motions to correct a sentence.

. . . .

2.24(5) *Correction of sentence.*

a. *Time when correction of sentence may be made.* The court may correct an illegal sentence at any time.

b. *Credit for time served.* The defendant shall receive full credit for time spent in custody under the sentence prior to correction or reduction.

of our state constitution differently than the United States Constitution on a mere citation of the applicable state constitution provision. *State v. Effler*, 769 N.W.2d 880, 895 (Iowa 2009) (Appel, J., dissenting).

Because a motion to correct an illegal sentence is not a critical stage of trial, Cohrs does not have a federal constitutional right to the appointment of counsel. We decline Cohrs' invitation to construe the Iowa Constitution to provide greater protections. Thus, Cohrs did not have a constitutional right to counsel for his motion to correct an illegal sentence.

**C. Cruel and Unusual Punishment.**

Cohrs maintains the lifetime special sentence is grossly disproportionate as it applies to his crime, in violation of the cruel and unusual punishment proscriptions of the Eighth Amendment to the United States Constitution and article 1, section 17 of the Iowa Constitution. *See State v. Oliver*, 812 N.W.2d 636, 648–49 (Iowa 2012). Such a challenge requires us to compare "*his* crime with *his* sentence," meaning we focus on the specific facts and circumstances of Cohrs' case. *See id.* at 647.

In evaluating whether a sentence is cruel and unusual, the United States Supreme Court has developed a three-part test. The threshold inquiry is whether the severity of the sentence is grossly disproportional to the gravity of the crime. *Solem v. Helm*, 463 U.S. 277, 291–92 (1983); *see also Oliver*, 812 N.W.2d at 649. If the threshold inquiry is satisfied, we then proceed to an intrajurisdictional analysis "comparing the challenged sentence to sentences for other crimes within the jurisdiction." *State v. Bruegger*, 773 N.W.2d 862, 873 (Iowa 2009). The third step is then an interjurisdictional analysis, in which we compare

sentences in other jurisdictions to the same or similar crimes. *Id.* Though the cruel and unusual punishment review is more stringent under the Iowa Constitution, the same analysis applies. *Oliver*, 812 N.W.2d at 649.

If the challenged sentence does not create an inference that it is grossly disproportionate, then no further inquiry is necessary. *Id.* Thus, we must first consider whether Cohrs' mandatory sentence under section 903B.1 is grossly disproportionate to his crime of third-degree sexual abuse. In doing so, "we owe substantial deference to the penalties the legislature has established for various crimes." *Id.* We do so because "[l]egislative judgments are generally regarded as the most reliable objective indicators of community standards for purposes of determining whether a punishment is cruel and unusual." *Bruegger*, 773 N.W.2d at 873. Furthermore, "it is rare that a sentence will be so grossly disproportionate to the crime as to satisfy the threshold inquiry and warrant further review." *Oliver*, 812 N.W.2d at 650. However, unique features of a case may "converge to generate a high risk of potential gross disproportionality." *Id.*

Here, Cohrs engaged in sexual intercourse with a fourteen-year-old girl when he was twenty-three years old. Cohrs pled guilty to sexual abuse in the third degree, pursuant to Iowa Code section 709.4(2)(c)(4). Cohrs notes that the statute is "broadly framed" and criminalizes such things as "Romeo and Juliet" relationships. *See Bruegger*, 773 N.W.2d at 884. Additionally, Cohrs maintains the risk of sexual offender recidivism has been overestimated. He also urges us to consider the onerous nature of the supervision—noting that an individual may violate and be revoked from parole based on what is otherwise noncriminal conduct.

We are unpersuaded by Cohrs assertions. Here, Cohrs was not in a relationship with H.L. At his guilty plea hearing, Cohrs told the court he "[r]eally didn't know her" because he had just met her for the first time that night. Our legislature has chosen to protect the public from various forms and degrees of sexual offenses through this special sentence. Our legislature has implemented this statutory scheme to protect victims like H.L. from defendants like Cohrs, who are significantly older than their victims.

Additionally, the lifetime special sentence subjects Cohrs to the supervision of the department of corrections as if on parole. *See* 2005 Iowa Acts ch. 158, § 39 (codified at Iowa Code § 903B.1 (2007)). "Parole is a lenient form of punishment that monitors a person's activities to ensure the person is complying with the law. The imposition of lifetime parole is not tantamount to a sentence of life imprisonment." *State v. Tripp*, 776 N.W.2d 855, 858 (Iowa 2010). Additionally, the board of parole may discharge the supervision. *See* 2005 Iowa Acts ch. 158, § 42 (codified at Iowa Code § 906.15 (2007)). Thus, if Cohrs avoids similar conduct and otherwise complies with the terms of his parole, he may avoid lifetime supervision by the department of corrections. This is not the "rare" sentence that is so grossly disproportionate as to warrant further review, and we need not reach the other two prongs of the *Solem* test. *See Oliver*, 812 N.W.2d at 650.

**IV. Conclusion.**

Because Cohrs did not request that counsel be appointed at the district court level and the district court did not appoint counsel on its own motion, we decline to consider whether he had a statutory right to have counsel appointed

because error was not preserved. We find that Cohrs did not have a constitutional right to be appointed counsel for his motion to correct an illegal sentence under the Federal Constitution, and we decline to interpret the Iowa Constitution to provide greater protections. Lastly, the imposition of the lifetime special sentence was not cruel and unusual. We affirm the district court's denial of Cohrs' motion to correct an illegal sentence.

**AFFIRMED.**