MANSFIELD, Justice
(dissenting).
I respectfully dissent. Under the court’s decision, the State will no longer be able to *230 insist upon signed claims, let alone verified ones. In my view, the court has disregarded clear language in chapter 669 and the Iowa Administrative Code, while uprooting established caselaw. All this is being done to bring to life a claim that the attorney likely knew was noncompliant when he submitted it.
This case involves alleged medical malpractice that occurred at the University of Iowa Hospitals on May 12, 2009. As early as April 2010, the Seguras were in contact with their present attorney. However, no claim was filed with the State until over a year later.
Iowa Code section 669.3 provides:
1. The attorney general, on behalf of the state of Iowa, shall consider, ascertain, adjust, compromise, settle, determine, and allow any claim that is subject to this chapter.
2. A claim made under this chapter shall be filed with the director of the department of management, who shall acknowledge receipt on behalf of the state.
3. The state appeal board shall adopt rules and procedures for the handling, processing, and investigation of claims, in accordance with chapter 17A.
Iowa Code § 669.3 (2013).
The applicable rules adopted by the state appeal board (board) under the authority of subsection 3 provide:
All claims should be typewritten, but claims printed by hand will be accepted if legible.
1.3(1) Place of filing. Claims shall be filed in triplicate with the Department of Management, State Capitol, Des Moines, Iowa 50319.
1.3(2) Verification. Claims shall be verified.
1.3(3) Names and signatures. A claim shall state thereon the name, address, telephone number, and age of the person making the claim and the name, address and telephone number of the attorney, if any, preparing the claim, and their signatures.
1.3(4) Designation by number. The executive secretary shall assign a number to each claim. Thereafter it may be referred to by such a number.
Iowa Admin. Code r. 543—1.3. Notably, these rules require that “[cjlaims shall be verified.” Id.
The board’s one-page claim form is not complicated or difficult to follow. There are sections for information about the claimant and for information on the claim itself. At the bottom of the page, consistent with the board’s rules, there is a space for “CLAIMANT’S SIGNATURE.” Right above the signature space the form states, “I, the claimant, being duly sworn upon oath depose and state that I have read the supplied information and the same is true and correct to the best of my belief.” In addition, at the top of the one-page form, the directions state, “CLAIMANT and NOTARY public must sign.”
Neither of the Seguras signed the form. Instead, their attorney signed the forms in the space for “CLAIMANT’S SIGNATURE.” He added the handwritten notation: “by attorney ... per POA.” “POA” of course is short for “power of attorney.”
In reality, the Seguras’ attorney had no powers of attorney. See Iowa Code § 633B.102(9) (“ ‘Power of attorney’ means a writing that grants authority to an agent to act in the place of the principal, whether or not the term ‘power of attorney1 is used.”). Arguably, the attorney could have been admonished for this misstatement. Regardless, the claim was clearly not verified by the claimant as required by rule *231 543—1.3. Indeed, the majority concedes this point.[6]
The verification requirement is not some trifling technicality. When the State waives sovereign immunity to allow claims against it, the State is entitled to insist that the claim be backed by the claimant’s oath as an assurance of its reliability. See id. § 669.4 (“The immunity of the state from suit and liability is waived to the extent provided in this chapter.” (Emphasis added.)); accord Rivera v. Woodward Res. Ctr., 830 N.W.2d 724, 727 (Iowa 2013) (recognizing that “compliance with an administrative scheme” is “[o]ne of the most prominent conditions interposed by the ITCA”). After all, the Internal Revenue Code requires that tax returns be verified, see 26 U.S.C. § 6065 (2012), insurance companies typically require that insurance claims be verified, and we require verifications under our own rules in a variety of situations, see, e.g., Iowa R. Civ. P. 1.405(4) (denial of signature); id. r. 1.509(l)(c) (interrogatory answers); id. r. 1.1502(1) (application for temporary injunction); id. r. 1.1901-Form 16 (expedited civil action certification). Here, because the Seguras’ claims were not verified, the Seguras were not bound under penalty of perjury to anything the claim forms said.[7]
To sum up: The statute specifically empowers the board to adopt rules for what a claim must contain. See Iowa Code § 669.3(3). The board did so. See Iowa Admin. Code r. 543—1.3. The Seguras’ claims failed to comply with those rules in a material way. As the majority puts it, “There is no question the Seguras failed to comply with the administrative rules prescribing the form of claims.... ”
The majority excuses this noncompliance by determining the board lacked authority to issue its longstanding administrative rules. The majority says that Iowa Code section 669.3(3) only authorizes the board to promulgate rules “for the handling, processing, and investigation of claims,” and not “for the presentment of claims”—as if the two are distinguishable.
I don’t follow this argument. In my view, language authorizing the board to issue rules for the “handling” and “processing” of claims empowers the board to adopt a rule stating a claim must be signed under oath by the claimant. We previously said so in Swanger v. State:
Section 25A.3 [now section 669.3] further empowers the appeal board to adopt rules and procedures for handling and processing claims. Pursuant to its rule-making authority, the state appeal board has prescribed the form and content of tort claims. Tort claims before the appeal board, for example, must be verified and signed by the claimant, filed with the department of management at Des Moines, and must describe the accident, injuries and claims in detail.
445 N.W.2d 344, 350 (Iowa 1989) (citation omitted). In other words, in Swanger, we cited the verification requirement as one example of a requirement the board has prescribed “[p]ursuant to its rule-making authority [in section 669.3].” Id. Today’s decision now tosses aside this language from Swanger.
Of course, we are entitled to change our minds. But why would we do so here? It would be impossible to have an orderly *232 system for the “processing” and “handling” of claims without some minimum criteria for what a claim must contain. Indeed, the court adopts minimum standards of its own—they just happen to be different from the board’s requirements as set forth in its regulations.
The court does not dispute that the proper presentment of a claim is a jurisdictional prerequisite to bringing a lawsuit under the Iowa Tort Claims Act (ITCA). See In re Estate of Voss, 553 N.W.2d 878, 880 (Iowa 1996) (“Improper presentment of a claim, or not presenting one at all, has been considered a failure to exhaust one’s administrative remedies, depriving the district court of subject matter jurisdiction.”). The disagreement is essentially over who gets to decide the contents of a claim. Is it (1) the justices of this court, or (2) the board through its duly promulgated regulations? I think the legislature delegated the matter to the board in Iowa Code section 669.3(8)—not to us.
Today’s decision is also at odds with Foss. Foss arose out of a fatal automobile accident where the State was allegedly at fault. See id. at 879. The deceased’s mother signed the claim as the claimant but had not yet been appointed administrator of her son’s estate. Id. We held that such a claim was insufficient:
Obviously, settlement of claims is greatly facilitated if the person making the claim is the person entitled to any recovery and has the authority to settle.
... [A] claim is defective if it is not made by a claimant to whom the State would be liable for the damages sought.
Id. at 881. This case presents the same circumstances, practically speaking. The person who actually made the claim was the Seguras’ attorney, who would not have been entitled to the recovery or authorized to settle the claim.
Voss emphasizes that the claim-filing requirements are supposed to eliminate “[t]he filing of multiple claims” and to save the State from having to wait for a claimant “to obtain the legal authority to pursue” a claim that has been filed. Id. at 881-82. Today these justifications vanish, and this aspect of Voss is effectively overruled. In its stead, the majority holds that a valid claim need only “identif[y] sufficient information for the board to investigate the claim and disclose[] the amount of damages claimed.” By this minimal standard, practically any piece of paper will do. The court thus shifts time, burden, and expense from the claimant to the State. And it does so despite the clear language of Iowa Code section 669.3(3) and the board’s administrative rules, not to mention the principle of a limited waiver of sovereign immunity.
The court relies on Federal Tort Claims Act (FTCA) precedent, but this reliance is flawed at its inception because of differences in the two statutes. We generally say that we are “guided by interpretations of the FTCA, which was the model for the ITCA, when the wording of the two Acts is identical or similar." Thomas v. Gavin, 838 N.W.2d 518, 525 (Iowa 2013) (emphasis added); see Smith v. Iowa State Univ. of Sci. & Tech., 851 N.W.2d 1, 21 (Iowa 2014); Minor v. State, 819 N.W.2d 383, 406 & n.10 (Iowa 2012); see also Godfrey v. State, 847 N.W.2d 578, 584 (Iowa 2014) (comparing section 669.5(2)(a) to similarly worded federal law). Here the wording of the two Acts is not identical or similar.
Unlike Iowa law, the FTCA requires only that “the claimant shall have first presented the claim to the appropriate Federal agency.” 28 U.S.C. § 2675(a) (emphasis added). By contrast, Iowa Code section 669.3 requires the attorney general to “consider, ascertain, adjust, compromise, settle, determine, and allow any claim” and *233 also requires the board to “adopt rules and procedures for the handling, processing, and investigation of claims.” Iowa Code § 669.3(1), (3). In both instances, section 669.3 uses the mandatory term “shall” with respect to these requirements. Id.
Federal courts interpreting the FTCA have accordingly held that Department of Justice regulations “which flesh out the requirements for the presentation of administrative claims for settlement” are not jurisdictionally binding because 28 U.S.C. § 2675 only mandates pre-suit notice. See Santiago-Ramirez v. Sec’y of Dep’t of Def., 984 F.2d 16, 19-20 (1st Cir. 1993) (“[T]his circuit has followed the general shift among all circuits toward a recognition of the distinction between presenting a claim in a section 2675 context and presenting a claim for settlement.”); Tucker v. U.S. Postal Serv., 676 F.2d 954, 957 (3d Cir. 1982) (“The question whether a plaintiff has presented the requisite section 2675 notice is determined without reference to whether that plaintiff has complied with all settlement related requests for information”). That is because the FTCA does not require or even authorize the government to adopt rules for the “handling” and “processing” of claims.
Our statutory scheme, on the other hand, mandates more than giving the State perfunctory notice. It is designed to facilitate prompt settlement, as we held in Voss. See 553 N.W.2d at 880-81 (“A requirement the claimant possess the capacity to sue is ... intended to allow a prompt investigation of claims against the State and facilitate an early settlement when possible.”). Whether or not the Seguras’ claims would have passed FTCA muster is therefore irrelevant. See, e.g., Griffen v. State, 767 N.W.2d 633, 635-36 (Iowa 2009) (rejecting an interpretation of the FTCA as “not applicable to the ITCA” when language in the Acts differ).
The majority also suggests today’s decision is supported by Schneider v. State, 789 N.W.2d 138 (Iowa 2010). I respectfully disagree. In that case, “[ejach of the plaintiffs ... filed an administrative claim on a form promulgated by the appeal board.” Id. at 145. There was no issue raised as to whether the claims met the formal requirements of Iowa Administrative Code rule 543—1.3. See id. Rather, the question we had to decide was “whether those plaintiffs who thereafter declined the board’s request for additional documentation failed to .exhaust the available administrative remedy and thereby deprived the district court of subject matter jurisdiction.” Id. We noted,
Although some of the plaintiffs failed to submit any documentation to augment their administrative claim forms, and others submitted documentation the State’s claims manager deemed conclu-sory, each of the challenged claims disclosed the type of claim (tort) asserted, stated the amount of property damage claimed, and provided a general statement of the relevant legal theory supporting it.
Id. And we said that was enough. Id. at 146.
Schneider thus involved the- different question of how much detail must be provided on behalf of a claim that is presumably verified and already complied with the board’s other requirements as to form. See id. (“Under these circumstances, we conclude the board had available to it the information it believed it needed to make its administrative determination.”).
The majority also states that the board “never attempted to enforce” the verification requirement. This assertion is unfair to the board. At the administrative level, the board denied the claims without giving a reason. The board didn’t know for a fact no powers of attorney existed until the case reached the district court. That is *234 when the State served a document request, asking for the powers of attorney. The Seguras’ attorney refused to respond to the request, raising a frivolous objection that the request violated the attorney-client privilege. Finally, after a motion to compel had been filed, counsel admitted there were no powers of attorney in a district com-t hearing. If anyone was giving somebody the runaround, it was the Seguras’ attorney and not the State.
While it might be desirable in the abstract to “accommodate[ ]” the interests of the Seguras and the State, as the majority puts it, that is not our role. “The State may ... be sued in tort, but only in the manner and to the extent to which consent has been given by the legislature.” Swanget, 445 N.W.2d at 346.
Lastly, let me add some observations regarding the special concurrence. The special concurrence first argues that Iowa Code section 669.13 only requires “the person filing the claim to file it in writing with the department of management within a specified time.” That is not an accurate paraphrasing of the statute. Section 669.13 bars the claim unless it was timely filed in writing with the department of management “under this chapter.” Iowa Code § 669.13(1) (emphasis added). “Under this chapter” means the filer has to comply with the filing requirements of this chapter, which are set forth in section 669.3 and the corresponding administrative rules. The special concurrence reads the phrase “under this chapter” out of the statute.
Alternatively, the special concurrence argues that another law, Iowa Code section 602.10114, overrides section 669.3 and the board’s administrative' rule requiring signature and verification by the claimant. Section 602.10114 dates back to our early statehood days and provides,
An attorney and counselor has power to:
1. Execute in the name of a client a bond; or other written instrument, necessary and proper for the prosecution of an action or proceeding about to be or already commenced, or for the prosecution or defense of any right growing out of an action, proceeding, or final judgment rendered therein.
Iowa Code § 602.10114(1).
According to the special concurrence, section 602.10114 empowers an attorney at all times to sign any litigation-related paper on the client’s behalf. If this were true, it would invalidate any other instance where a statute or rule requires client verification or client signature.
It isn’t true. This statute has been interpreted as giving the attorney authority to execute papers on the client’s behalf unless another law provides otherwise. See Cassady v. Mott, 203 Iowa 17, 19, 212 N.W. 332, 333 (1927) (quoting this statute and finding that an attorney could sign notices of forfeiture after noting that the forfeiture law “does not in terms require that the notice of forfeiture must be signed in person by the parties”); In re Oldfield’s Estate, 158 Iowa 98, 103-04, 138 N.W. 846, 848-49 (1912) (indicating that this statute allows the attorney to sign the notice of appeal for the appellant “where there is no statutory requirement otherwise”); see also Iowa Code § 4.7 (resolving a conflict between a general provision and an irreconcilable special provision in favor of the special provision). Here Iowa Code section 669.3 and rule 543—1.3 provide otherwise.
For the foregoing reasons, I would affirm the judgment of the district court and the decision of the court of appeals.
Waterman, J., joins this dissent.

. Given the court’s opinion, from now on, nobody will need to sign the claim forms.

. We also require appellants in child-in-need-of-assistance and termination-of-parental-rights cases to personally sign the notice of appeal, even though a verification is not required. See, e.g., Iowa R. App. P. 6.102(l)(a) ("The notice of appeal cannot be filed unless signed by both the appellant’s counsel and the appellant.’’).