Richard E. CONNOLLY, Helen C.
Connolly, and Christopher
Hansen, Appellees,

v.

DALLAS COUNTY, IOWA, Appellant.

No. 89–1297.

Supreme Court of Iowa.

Feb. 20, 1991.

Ronald A. Riley of Hansen, McClintock & Riley, Des Moines, for appellant.

Michael W. O'Malley of Connolly, O'Malley, Lillis, Hansen & Olson, Des Moines, for appellees.

Considered by HARRIS, P.J., and LARSON, SCHULTZ, CARTER, and LAVORATO, JJ.

CARTER, Justice.

Defendant, Dallas County, appeals from a judgment finding it liable for flood damage incurred by plaintiffs, Richard E. Connolly, Helen C. Connolly, and Christopher Hansen, which the court found was proximately caused by the County's action in removing an old bridge abutment and widening the channel of a creek. Upon considering the arguments of the parties, we reverse the judgment of the district court and remand the case for further proceedings.

The County raises several challenges to the judgment on appeal. We need consider only two. These are (1) whether the County is exempted from liability by Iowa Code sections 613A.4(7) and (8) (1989), and (2) whether, if it is not, the defendant is otherwise liable for diverting the existing water flow across plaintiffs' lands.

The district court found the County to be liable for plaintiffs' crop damage under legal theories pertaining to the duties of an upstream or dominant riparian owner to a downstream or servient owner.[1] Facts which are pertinent to this appeal are mentioned in our discussion of the legal issues presented.

I. *Applicability of Iowa Code Sections 613A.4(7) and (8).*

Defendant's first argument relates to whether Iowa Code sections 613A.4(7) or (8) serve to exempt it from liability in re-

gard to plaintiffs' claims. These statutes provide, in part:

> The liability imposed by section 613A.2 shall have no application to any claim enumerated in this section....
>
> ....
>
> 7. Any claim based upon or arising out of a claim of negligent design or specification, negligent adoption of design or specification, or negligent construction or reconstruction of a highway, secondary road, or street as defined in section 321.1, subsection 48, that was constructed or reconstructed in accordance with a generally recognized engineering or safety standard, criteria, or design theory in existence at the time of the construction or reconstruction....
>
> 8. Any claim based upon or arising out of a claim of negligent design or specification, negligent adoption of design or specification, or negligent construction or reconstruction of a public improvement as defined in section 384.37, subsection 1, or other public facility that was constructed or reconstructed in accordance with a generally recognized engineering or safety standard, criteria, or design theory in existence at the time of the construction or reconstruction.

The district court concluded that neither of these statutes applies to the County's bridge replacement and channel-widening project. We disagree with that conclusion. Subparagraph (7) of this statute exempts the public agency from liability for "any claim based upon or arising out of" negligent design or construction or reconstruction of a highway or secondary road. We think the project on secondary road F–31, involving removal of the existing bridge and construction of a new bridge, involves reconstruction of a secondary road. Plaintiffs' claims arise out of that activity. In addition, we believe the channel widening and relocation is a public improvement within the contemplation of subparagraph (8) of this statute.

---

1. In so doing, the court relied on the rules of law espoused in *Oak Leaf Country Club v. Wilson,* 257 N.W.2d 739, 745–46 (Iowa 1977).

Subparagraphs (7) and (8) of section 613A.4 each serve two purposes. First, they provide a state-of-the-art defense with respect to design and construction of public improvements. Second, these statutes establish that the extent of the public agency's duty for purposes of establishing non-constitutional torts is measured by the "generally recognized engineering or safety standard, criteria, or design theory" in existence at the time of the construction or reconstruction. Judged by these criteria, we believe the district court determined the extent of the County's liability by applying an incorrect legal standard.

■ The duty of an upstream or dominant riparian owner to a downstream or servient owner includes a responsibility for protecting the status quo which, if applied to a public agency, would inappropriately limit its activities in the public interest.[2] The watercourse over plaintiffs' lands, prior to the F–31 bridge project, was not in any material respect a natural watercourse. The flow was directed in a large part by the positioning of the abutments of the old bridge. We have recognized that

[t]he rule that an artificial ditch may, under some circumstances, become a natural watercourse by the lapse of time, *as between private individuals*, does not apply when the rights of the public are involved; for neither the statute of limitations nor prescriptive right can be urged or claimed against the public.

*Brightman v. Hetzel*, 183 Iowa 385, 395, 167 N.W. 89, 92 (1918); *see also Franklin v. Sedore*, 450 N.W.2d 849, 852 (Iowa 1990). Consistent with this principle, if the flooding of plaintiffs' crops was the product of removing the old abutments, the County was under no duty to guard against that consequence. Consequently, it was possible for the County to subject that portion of the floodplain in which plaintiffs' lands were located to a greater risk of flooding and still be acting in accordance with generally recognized engineering criteria; particularly, if the project was designed to reduce flooding throughout the floodplain as a whole.

With respect to public flood control projects, this court observed as follows more than 100 years ago:

[W]hat the plaintiff claims is that he has the right to plant himself on low ground next to a river and insist that overflow water shall pass over his land onto the land of other persons. That he has no such right requires no written argument nor authority to demonstrate.

*Hoard v. City of Des Moines*, 62 Iowa 326, 327, 17 N.W. 527, 528 (1883). Plaintiffs' lands, although in the floodplain, had previously enjoyed a unique shielding from flooding as a result of the juxtaposition of their property and the old bridge abutment. When the new bridge was built, the abutments were relocated, and the channel configuration changed. This dramatically increased the probability of plaintiffs' lands being flooded. At the same time, the flooding potential for other property along the creek (particularly upstream) was markedly decreased.

■ We are not suggesting whether or not the improvements involved in the present controversy were designed or built in accordance with generally recognized engineering or safety standards. This is not our role. We only hold that the district court did not make a finding as to whether plaintiffs had established that it was not.[3]

## II. Defendant's Liability for Damages Under a Theory of Inverse Condemnation.

■ We also consider whether, and under what circumstances, the plaintiffs on

2. Although we referred to this duty in the case of *Rosendahl Levy v. Iowa State Highway Commission*, 171 N.W.2d 530, 536 (Iowa 1969), the public agency in that case was found to have violated a specific statute (Iowa Code § 314.7) which regulated diversion of water from roadways. There is no evidence in the present case that the flooding of plaintiffs' lands was in any way due to waters diverted from a public roadway.

3. The district court, although indicating that the standards fixed by §§ 613A.4(7) and (8) were inapplicable to plaintiffs' claim, stated that it believed defendant had failed to establish that its design was proper under state-of-the-art standards. It was not defendant's burden to establish that fact but, rather, was plaintiffs' burden to establish the contrary.

retrial should be permitted to show that the actions of the defendant may have constituted a taking of their property without just compensation. If a public flood control project, when functioning as it was designed to function, causes flooding to a particular area which would not have flooded in the absence of the improvement, an inverse condemnation claim may lie. *See Wapsipinicon Power Co. v. Waterhouse,* 186 Iowa 524, 530, 167 N.W. 623, 625 (1918); *Iowa Power Co. v. Hoover,* 166 Iowa 415, 440, 147 N.W. 858, 868 (1914); *Belair v. Riverside County Flood Control Dist.,* 47 Cal.3d 550, 558–62, 764 P.2d 1070, 1074–76, 253 Cal.Rptr. 693, 697–700 (1988). Consequently, even if the court ultimately finds that the County is not liable for the increased flooding of plaintiffs' lands under a negligence theory, defendant's actions may have constituted a taking of private property without compensation.[4]

■ The rule of causation to be applied in determining such a claim is cause in fact. A claimant must establish that the damage to property for which recovery is sought would not have occurred but for the public improvement. In the present case, this determination must be made solely with respect to the channel alteration, disregarding that portion of the increased flow caused by removing the old bridge abutments.

■ With respect to permanent improvements, a cause of action for inverse condemnation accrues the first time damage occurs to lands or chattels real which was in fact caused by the improvement. *Wapsipinicon Power Co.,* 186 Iowa at 527, 167 N.W. at 624–25. This cause of action belongs to the person owning the land, crops, or either at that time (or an assignee of such person). *Id.* That person or assignee must seek all damages both present and future in a single action. *Id.* This damage includes crop loss caused by the first flooding and future damages, ordinarily determined by the difference in the value of the

land prior to and after the completion of the public improvement. *Id.*

■ We further believe, although the California court in *Belair* suggests otherwise, that such liability does not require a showing that the public improvement has failed to function as intended. Indeed, we find that it is in those situations where the improvement has functioned as intended but, in the process, has done damage to private property that inverse condemnation liability is most appropriate. *See* Van Alstyne, *Inverse Condemnation: Unintended Physical Damage,* 20 Hastings L.J. 431, 435–38 (1969).

We reverse the judgment of the district court and remand the case to that court for a retrial of the issues consistent with the rules of law established in this opinion. Hopefully, in this nonjury case the parties will agree to include much of the evidence presented at the first trial in the record on retrial. We do not, however, limit the scope of the evidence on retrial.

REVERSED AND REMANDED.

---

**4.** Although §§ 613A.4(7) and (8) when read with the definition of § 613A.1(3) would appear to exempt the public agency from liability for constitutional torts, such an interpretation would be in violation of article I, § 18 of the Iowa Constitution.