Dennis FISCHER, Julie Fischer, James Horn, Judy Horn, Todd Niggeling, Liz Niggeling, Kraig Sankey, Christine Sankey, Shaun Smith, Kari Smith, Mark Stevenson, Lorin Walker and Linda Walker, Appellants,

v.

CITY OF SIOUX CITY, Appellee.

No. 03–1431.

Supreme Court of Iowa.

April 15, 2005.

Michael P. Schmiedt and Marci L. Iseminger of Crary, Huff, Inkster, Sheehan, Ringgenberg, Hartnett & Storm, P.C., Sioux City, for appellants.

James L. Abshier, City Attorney, Sioux City, for appellee.

WIGGINS, Justice.

The plaintiffs are seven families who reside in the area around the intersection of Sergeant Road and Waldon Avenue in Sioux City, Iowa. On July 2, 1999, an unusually heavy rainstorm resulted in excess surface water running into the intersection. The rainwater from the storm backed up into the families' basements causing damage to their property. The families sued Sioux City alleging the city was negligent in connection with its storm-drainage system. The district court ruled the city was immune from liability under Iowa Code section 670.4(8) (2001). Because we agree with the city that substantial evidence supports the district court's conclusion that the city was immune from

liability under section 670.4(8), we affirm the judgment of the district court.

## I. Background Facts and Proceedings.

In 1973, the city constructed the storm-drainage system when much of the drainage basin was undeveloped. As designed, the system utilized a sixty-inch pipe and allowed excess water to run off the intersection on an overland flow route. The families allege subsequent to the installation of the system the city allowed two events to take place contributing to the flooding in 1999.

The first event occurred in 1978 when the city council approved the construction of Southern Hills Mall, located five blocks from the intersection. The families claim the mall and other commercial development spawned by the mall significantly increased the amount of runoff into the drainage area because the city allowed the storm-drainage system in and around the mall area to connect to the 1973 storm-drainage system. The second event occurred when the residential development around the intersection blocked the overland flow route and created a low point in the intersection where water gathered and created a pool of water during a storm event, known as a sag condition. The families claim the city should have precluded the use of certain lots for development so excess water would continue to run off the intersection on the overland flow route. They also claim the city should not have allowed the residential development in the area because the development created the sag condition.

On August 11, 1999, each family filed separate petitions seeking compensation from the city for damages to their personal and real property. The petitions alleged ordinary and gross negligence against the city for its failure to properly design, con-

struct, inspect, and maintain the storm-drainage system serving the drainage area where the families' properties were located; its failure to rebuild or replace the storm-sewer line prior to July 2, 1999; and its failure to require the drainage area in question to be properly graded and swaled so the surface water would run off without causing damage to the families' properties.

The district court consolidated the cases. The cases proceeded to trial in 2001. The district court entered judgment in favor of the families. The city appealed. On appeal, we reversed the district court decision and remanded the case for further proceedings holding the district court abused its discretion by granting the families' motion for partial summary judgment based on issue preclusion.[1] *Fischer v. City of Sioux City*, 654 N.W.2d 544, 550 (Iowa 2002).

Relevant to this appeal, on retrial the district court determined the storm-drainage system as constructed was in accordance with a generally recognized engineering standard in existence in 1973 when the city constructed the system. The district court also determined even after the commercial development, which took place in the 1970s, the city's use of detention ponds to neutralize the effects of the added runoff created by the commercial properties was adequate to handle the additional runoff.[2] Based on these findings, the district court concluded the city was immune from liability under Iowa Code section 670.4(8), which grants immunity to a city if the city constructed or reconstructed a public improvement or other public facility in accordance with a generally recognized engineering standard, criteria, or design theory in existence at the time of the construction or reconstruction. The families appeal.

## II. Issue.

The court must determine whether substantial evidence supports the district court's findings that the city was immune from liability for the families' claims under Iowa Code section 670.4(8).

## III. Scope of Review.

■■■ Our review is for correction of errors at law. Iowa R.App. P. 6.4. The district court's findings of fact are binding on us if supported by substantial evidence. Iowa R.App. P. 6.14(6)(*a*); *Molo Oil Co. v. City of Dubuque*, 692 N.W.2d 686, 690 (Iowa 2005). When a party argues the district court's ruling is not supported by substantial evidence,

> we view the evidence in the light most favorable to the judgment. When a reasonable mind would accept the evidence as adequate to reach a conclusion, the evidence is substantial. Evidence is not

---

1. In 1996, a flood occurred at the same intersection and another resident obtained a judgment against the city based on a district court finding that the city had negligently designed the storm sewer by using too small a pipe. *Fischer v. City of Sioux City*, 654 N.W.2d 544, 546 (Iowa 2002). The families in the present case asserted a claim of issue preclusion on the issue of negligent design based on the judgment obtained by the other plaintiff. The district court granted the families' motion for partial summary judgment precluding the city from relitigating the question of its negligence in designing the storm system.

2. As to the issues not relevant to this appeal, the district court found "no sufficient evidence to sustain" the families' allegations that the city failed to properly inspect and maintain the storm-drainage system. The district court also determined that at a point in time when the city might have realized improvements to the storm-drainage system may have been necessary, the city was immune from liability for any failure to make any improvements under the discretionary function immunity provided for by section 670.4(3). The families do not raise these issues on appeal.

insubstantial merely because we may draw different conclusions from it; the ultimate question is whether it supports the finding actually made, not whether the evidence would support a different finding. However, neither the district court's conclusions of law nor its application of its legal conclusions is binding on appeal.

*Raper v. State*, 688 N.W.2d 29, 36 (Iowa 2004) (citations omitted).

## IV. Analysis.

■ The Iowa Code provides a municipality shall be immune from liability for

[a]ny claim based upon or arising out of a claim of negligent design or specification, negligent adoption of design or specification, or negligent construction or reconstruction of a public improvement as defined in section 384.37, subsection 19, or other public facility that was constructed or reconstructed in accordance with a generally recognized engineering or safety standard, criteria, or design theory in existence at the time of the construction or reconstruction. A claim under this chapter shall not be allowed for failure to upgrade, improve, or alter any aspect of an existing public improvement or other public facility to new, changed, or altered design standards. This subsection shall not apply to claims based upon gross negligence.

Iowa Code § 670.4(8). Section 670.4(8) not only provides the city with a state-of-the-art defense with respect to the design and construction of public improvements but also states the finder of fact measures the extent of the city's duty for nonconstitutional torts by the "generally recognized engineering or safety standard, criteria, or design theory" in existence at the time of the construction or reconstruction. *Connolly v. Dallas County*, 465 N.W.2d 875, 877 (Iowa 1991). It is the plaintiff's burden to establish the city did not construct or reconstruct the improvement "in accordance with a generally recognized engineering or safety standard, criteria, or design theory in existence at the time of the construction or reconstruction." *Id.* at n. 3.

■ The families contend substantial evidence does not support the district court's findings that the city constructed the storm-drainage system in accordance with a generally recognized engineering standard in existence at the time the city constructed the system. The families argue that in order for the storm-drainage system to comply with the standards in existence in 1973, the city should have used a sixty-six-inch pipe instead of a sixty-inch pipe in the construction of the system. The families also argue the 1973 standards required an overland flow route protected by a permanent easement, which not only would protect the overland flow route, but also would have prevented a sag condition from developing. The families' expert supported these assertions.

The city's experts testified that when the city installed the storm-drainage system in 1973, a sixty-inch pipe complied with an existing generally recognized engineering standard. The generally recognized engineering standard used by the city at that time was for the storm-drainage system to be able to handle a ten-year storm without flooding. As to an overland flow route, one of the city's experts conceded in the 1970s an overflow route in a storm-drainage system was a good idea, but the incorporation of an overland flow route in a storm-drainage system did not become a generally recognized engineering standard until the 1980s. The district court agreed with the city's experts and found the sixty-inch pipe was capable of handling a ten-year storm, and there was no generally recognized engineering stan-

dard requiring the city to have an overland flow route or to maintain such a route on a permanent basis. The city was not required to update its system to require a permanent easement to protect the overland flow rate when the incorporation of an overland flow rate became a generally recognized engineering standard in the 1980s. *See* Iowa Code § 670.4(8) (providing "[a] claim under this chapter shall not be allowed for failure to upgrade, improve, or alter any aspect of an existing public improvement or other public facility to new, changed, or altered design standards"). Based on these findings, the district court concluded the city was immune from liability for the families' claims under section 670.4(8).

The district court had the opportunity to view the witnesses and assess their credibility. After doing so, the district court accepted the city's evidence over the families' evidence. The district court was free to resolve the conflict in the testimony in favor of the city. Thus, substantial evidence supports the district court's findings that when the city installed the storm-drainage system in 1973, a sixty-inch pipe complied with an existing generally recognized engineering standard, and there was no generally recognized engineering standard requiring the city to have an overland flow route or maintain such a route on a permanent basis.

■ The families also argue the city was required to redesign the system because the city allowed the commercial development to discharge its runoff into the original storm-drainage system, when the city authorized the construction of the commercial development in and around the mall in the late 1970s. The families premise this argument on the fact at the time the city constructed the original storm-drainage system, most of the area served by the system was undeveloped. Soon after the city constructed the system, the city authorized the construction of the mall in 1978. The mall attracted other commercial developments in the area. Commercial development creates a tremendous amount of runoff from the roofs and concrete parking areas, in contrast to residential areas that have green spaces to absorb the runoff. When the city authorized the construction of the mall, the city allowed the mall and any future commercial development in the area to connect their storm-drainage system to the original system constructed in 1973. Prior to 1984, the city did not require the commercial developments to build detention ponds. The families contend the change in the types of the development the city allowed in the area serving the original storm-drainage system required the city to run an additional pipe parallel to the original pipe diverting the water outside of the original drainage basin, or develop adequate detention ponds to handle the excess water flow from the commercial developments in order for the original storm-drainage system to continue to meet the ten-year storm standard used when the system was constructed in 1973.

Our review of the record reveals by 1984 the city recognized commercial development in and around the mall was creating additional runoff that potentially could lead to flooding at the down-stream end of the system. In 1984, the executive committee of the city's planning and zoning commission studied the problem and determined there were two options available to the city to deal with the situation. The first involved the installation of a parallel pipe to divert the runoff outside of the original drainage basin. The second option was to require all future non-single family residential developments in the area to have on-site detention ponds. The design of the detention ponds would allow the ponds to

release water into the system at a rate equal to a rate as if the site was undeveloped.

The committee estimated the cost to the city to install a parallel pipe was approximately $40,000. The committee recommended and the city decided to use on-site detention ponds with controlled release rates to remedy the situation. After the adoption of the detention pond option, all future non-single family residential developments were required to use detention ponds with controlled release rates.

The families' expert testified the original storm-drainage system could not handle a ten-year storm due to runoff created by the additional commercial development in the area, even with the addition of the detention-pond system. The city's expert testified the detention ponds not only allowed the original storm-drainage system to continue to handle a ten-year storm as originally designed, but with the addition of the ponds the system was actually capable of handling a twenty-five-year storm. This testimony supported the position that the city did provide adequate detention ponds to handle the excess water flow from the commercial developments in order for the original storm-drainage system to continue to meet the ten-year storm standard used when the system was constructed. The district court chose to accept the opinions of the city's expert over the families' expert because the city's expert used a more accurate and sophisticated model in reaching his conclusions.

We agree with the city that substantial evidence supports the district court's finding the detention ponds maintained the storm-drainage system in accordance with a generally recognized engineering standard requiring the system to be able to handle a ten-year storm without flooding. Based on this finding, the district court was correct when it determined the city was immune from liability for the families' claims under Iowa Code section 670.4(8).

## V. Disposition.

Because substantial evidence supports the district court's conclusion that the city was immune from liability for the families' claims under Iowa Code section 670.4(8), we affirm the judgment of the district court.

**AFFIRMED.**