# IN THE SUPREME COURT OF IOWA

No. 19–0484

Filed June 12, 2020

**KATHRYN MARIE BREESE,** Individually and as Mother and Next Friend of **E.K.B.,** a Minor Child,

Appellants,

vs.

**CITY OF BURLINGTON,**

Appellee.

---

Appeal from the Iowa District Court for Des Moines County, Michael J. Schilling, Judge.

Plaintiffs appeal the district court's grant of summary judgment dismissing tort claims against the city arising from a bicycle accident that occurred on a sewer box connected to a public pathway. **REVERSED AND REMANDED.**

Stephen T. Fieweger, Davenport, for appellants.

J. Scott Bardole of Andersen & Associates, West Des Moines, for appellee.

**CHRISTENSEN, Chief Justice.**

This case involves a bicycle accident that occurred when a mother struck a tree branch while riding on a sewer box that was connected to a public pathway and fell approximately ten feet from the sewer box to the ground. She sustained serious injuries and her coplaintiff, her then nine-year-old daughter, sustained emotional injuries. Plaintiffs sued the City of Burlington seeking recovery for damages resulting from the City's allegedly negligent conduct in connecting the sewer box to the pathway without providing guardrails, in failing to provide warning signs that the pathway reached dangerous heights without a safe turn-around point, and in failing to provide warning signs that the sewer box was not part of the trail system. By failing to provide these measures, plaintiffs maintain the City gave the sewer box the appearance that it was part of the City's trail system.

The district court granted summary judgment to the City based on the public-duty doctrine and state-of-the-art defense. Plaintiffs appealed. For the reasons explained below, we reverse the district court's grant of summary judgment to the City because the public-duty doctrine does not shield the City from its affirmative acts in this situation. Further, there is a genuine issue of material fact as to whether the City's pathway connected to the sewer box met the recognized safety standards at the time of construction.

## I. Background Facts and Proceedings.

On August 30, 2015, Kathryn Breese and E.K.B., her nine-year-old daughter, were riding their bicycles through the northern edge of Dankwardt Park in Burlington, Iowa. Without realizing they were doing so, Breese and E.K.B. began riding on top of a sewer box. The box was directly connected to the pathway and the top of the sewer box was flush

with the pathway at the point of connection. The sewer box led into a wooded area. There was no indication by appearance or signage that the sewer box was not part of the Dankwardt Park pathway.

Approximately five minutes into riding on the sewer box, Breese noticed that they were riding on an area that was rising higher above ground and had low-hanging tree branches in front of them. There were no guardrails or warning signs, and Breese and E.K.B. were on the part of the sewer box that was around ten feet above the ground. Breese instructed E.K.B. to stop and decided they should turn around.

After Breese helped E.K.B. turn her bicycle around safely, Breese tried to turn her own bicycle around. In doing so, Breese struck a tree branch and lost control of her bicycle. She fell around ten feet to the ground from the sewer box, resulting in serious injuries. E.K.B. left to summon help. Emergency medical technicians arrived to assist Breese, and Breese was transported to Great River Medical Center for her injuries.

On August 29, 2017, the plaintiffs, Breese and E.K.B., by and through Breese as her mother and next friend, filed suit against the City of Burlington (City). Plaintiffs alleged that the City was negligent in failing to place guardrails along the sewer box, failing to warn users that the path "reached hazardous heights and had no safe turn around points," and failing to warn users of the trail that the sewer box was not part of the Dankwardt Park trail system. Plaintiffs alleged this negligence was the proximate cause of their injuries, including emotional injuries to E.K.B. from the trauma of the incident. On October 19, the City filed an answer denying liability and pleading various affirmative defenses.

On January 16, 2019, the City filed a motion for summary judgment, asserting two independent grounds: (1) the public-duty doctrine precluded plaintiffs' action, and (2) the City was immune from liability

under the state-of-the-art defense. The City submitted several exhibits with its statement of facts. These exhibits included the affidavit of Eric Tysland, the Community Development and Parks Director for the City of Burlington, who declared the City has never officially designated the sewer box as a hiking or bicycle trail nor has the City ever modified the sewer box. The City also submitted the affidavit of architect Robert Plichta, who opined that the sewer box was constructed in accordance with the generally recognized engineering and safety standards in existence at the time of its construction circa 1930. The City's reply to plaintiffs' resistance contained additional exhibits in the form of copies of two of the City's liability insurance policies.

Plaintiffs filed a resistance to the motion for summary judgment on February 1 and submitted a response to the City's statement of facts that contained additional exhibits. These exhibits included the affidavit and reports of Thomas Rush, a professional engineer, who claimed there was a City-created map that referred to the sewer box as part of the "sewer trail." Moreover, plaintiffs alleged the City connected the sewer box to the park pathway between 1980 and 1992 based on the following interrogatory and the City's answer:

> Interrogatory No.15: If as the defendant alleges that this pathway that plaintiffs used on August 30, 2015 was a sewer box, please state why the defendant connected the park pathway to the sewer box and identify each person . . . who participated in the decision to do so.
>
> **Answer: The pathway was built between 1980 and 1992. No current City employees were involved in the construction. Defendant is attempting to locate retired employees who may have knowledge as to why the pathway was constructed.**

Plaintiffs also relied on pictures attached to an exhibit that show an area where the Dankwardt Park trail connects at-grade with the pathway

leading to the sewer box, claiming this constitutes the City's "upgrade" or "improvement" to the sewer box. Consequently, plaintiffs maintained, the City should have complied with the applicable engineering and safety standards in effect between 1980 and 1992. According to the affidavit and reports of Rush, an Iowa Department of Transportation (DOT) publication called "Iowa Trails 2000" that provides guidance for dealing with drop-offs in proximity to multi-use trails or facilities used by pedestrians and bicyclists proclaims a fence is appropriate when either side of a trail drops off steeply.

Rush also referred to two publications by the American Association of State Highway and Transportation Officials (AASHTO) that would have recommended a graded shoulder area of at least three to five feet wide or physical barriers or rails for steep slopes, though no date was given for these publications. Based on these publications, Rush concluded guardrails and warning signs could have prevented plaintiffs' incident. Plaintiffs relied on this evidence to demonstrate the City failed to comply with the applicable engineering and safety standards in effect between 1980 and 1992.

On March 10, the district court entered an order granting the City's motion for summary judgment. The district court reasoned the public-duty doctrine, which does not allow individuals to sue the government for breach of a duty owed to the public at large, barred plaintiffs' claims. As the district court explained,

> here the City has been sued for failure to install guardrails or place warning signs to alert pedestrians or bicyclists in a City-owned park. These are safety-related duties owed to the general public. . . . [T]here is no special relationship with the City for bicyclists in Dankwardt Park. Therefore, the public duty rule applies, and the City's Motion for Summary Judgment must be granted on the basis that the City owed no duty to the Plaintiffs.

The district court also concluded the City was immune from liability based on the state-of-the-art defense. In doing so, the district court noted that plaintiffs "offered no proof of the City's failure to adhere to a generally recognized engineering or safety standard, criteria, or design theory in existence in the 1930's era when the sewer box/path was constructed." The district court further found that connecting the sewer box to the Dankwardt Park path between 1980 and 1992 did not constitute a "reconstruction" under the law.[1] Plaintiffs appealed, and we retained the appeal.

## II. Standard of Review.

We review a district court's summary judgment ruling for correction of errors at law. *Albaugh v. The Reserve*, 930 N.W.2d 676, 682 (Iowa 2019). In doing so, "[w]e view the record in the light most favorable to the nonmoving party." *Deeds v. City of Marion*, 914 N.W.2d 330, 339 (Iowa 2018). "Summary judgment is proper when the moving party has shown 'there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.' " *Albaugh*, 930 N.W.2d at 682 (quoting *Jahnke v. Deere & Co.*, 912 N.W.2d 136, 141 (Iowa 2018)). When the facts are undisputed and only the legal consequences are at issue, summary judgment is proper. *DuTrac Cmty. Credit Union v. Radiology Grp. Real Estate, L.C.*, 891 N.W.2d 210, 215 (Iowa 2017).

## III. Analysis.

Plaintiffs present two main arguments on appeal. First, they argue the district court erred in applying the public-duty doctrine. Second, they maintain the district court erred in concluding the City was immune from

---

[1]The district court also rejected plaintiffs' argument that the City's purchase of liability insurance waived its immunity for negligent design and construction, pointing out that the policy did not provide coverage where the City would not otherwise be liable. The plaintiffs do not appeal this ruling.

liability under the state-of-the-art defense because the City did not comply with the safety standards in existence when it connected the pathway to the sewer box between 1980 and 1992. We address these arguments in turn.

**A. The Public-Duty Doctrine.** The district court ruled that the public-duty doctrine bars plaintiffs' common law claims against the City. Plaintiffs' argument against the public-duty doctrine is twofold. First, relying on language in *Johnson v. Humboldt County*, 913 N.W.2d 256, 266 (Iowa 2018), plaintiffs argue the public-duty doctrine does not protect an entity like the City when it affirmatively acts and does so negligently, as plaintiffs claim the City did by connecting the pathway to the sewer box. Alternatively, if the public-duty doctrine applies, plaintiffs maintain they meet an exception to the doctrine because they had a special relationship with the City as bicyclists who were injured due to what plaintiffs claim was a negligent construction or reconstruction of a public improvement to the pathway. For the reasons discussed below, we agree the public-duty doctrine does not apply to protect the City from its affirmative acts and reverse the district court's grant of summary judgment to the City on this ground.

1. *Overview.* Plaintiffs rely on common law negligence and cite Iowa Code section 670.2 (2017), the Iowa Municipal Tort Claims Act (IMTCA), for their claim that the City is liable for its alleged negligence in not installing guardrails or posting warning signs after it connected the pathway to the sewer box. Unless otherwise provided by chapter 670, "every municipality is subject to liability for its torts and those of its officers and employees, acting within the scope of their employment or duties, whether arising out of a governmental or proprietary function." Iowa Code § 670.2. In *Kolbe v. State,* we recognized that the public-duty doctrine is

coexistent with IMTCA because the public-duty doctrine is not rooted in government immunity. 625 N.W.2d 721, 729–30 (Iowa 2001) (en banc); *see also Johnson*, 913 N.W.2d at 264 (explaining the public-duty doctrine's coexistence with IMTCA and our previous holdings acknowledging this coexistence). Instead of protecting a governmental entity from liability for the breach of what would otherwise be an enforceable duty to plaintiffs as immunity does, the public-duty doctrine examines whether the governmental entity owed any enforceable duty to plaintiffs to begin with. *Kolbe*, 625 N.W.2d at 729–30.

Under the public-duty doctrine, "a duty to all is a duty to none." 18 Eugene McQuillin, *McQuillin on Municipal Corporations* § 53.18 (3d ed. 2006) [hereinafter McQuillin]. "[I]f a duty is owed to the public generally, there is no liability to an individual member of that group." *Johnson*, 913 N.W.2d at 260 (quoting *Estate of McFarlin*, 881 N.W.2d 51, 58 (Iowa 2016)). This duty "can either arise from a statute or from [the City's] obligation to protect the public at large." *Kolbe*, 625 N.W.2d at 729.

Our court has continued to reiterate the validity of the public-duty doctrine in cases involving claims against a governmental entity for failing to fulfill safety-related duties. *See Johnson*, 913 N.W.2d at 260–62 (summarizing a number of our public-duty doctrine cases). In *Johnson*, we held the public-duty doctrine precluded a vehicle passenger from suing a county after she was injured when the vehicle she was riding in went off a county road and into a ditch, striking a concrete embankment in the ditch. *Id.* at 258–59. The plaintiff argued the county was negligent for failing to cause the removal of the concrete embankment constructed by a private landowner, which was located on the county's right-of-way easement over that landowner's private land. *Id.* at 259. We affirmed the district court's summary judgment ruling to the county based on the

public-duty doctrine, explaining that "[a]ny duty to remove obstructions from the right-of-way corridor adjacent to the highway would be a duty owed to *all* users of this public road.  It would thus be a public duty."  *Id.* at 261.

Two years earlier, in *Estate of McFarlin*, we held the public-duty doctrine precluded boaters involved in an accident on state-owned Storm Lake from an action against the state.  881 N.W.2d at 63.  We reasoned that plaintiffs' claims, including claims that the state failed to adequately mark a dredge pipe location or post warning signs about the dredging operation, were not actionable against the state because they involved "safety-related duties" owed to the general public.  *Id.*  The dredging operation was not being conducted by the state but by a consortium, including the City of Storm Lake and Buena Vista County.  *Id.* at 53–54.

Likewise, nine years before that, in *Raas v. State*, we applied the public-duty doctrine to claims brought by two individuals who were injured by inmates who had escaped from the Iowa Medical and Classification in Oakdale.  729 N.W.2d 444, 446 (Iowa 2007).  After determining that the doctrine was "alive and well in Iowa," we proceeded to apply it to the facts of the case.  *Id.* at 449.  We held that the public-duty doctrine barred any claim against the state by the plaintiff who had been injured after the inmates had fled the Oakdale premises.  *Id.* at 450.  However, we found that the plaintiff who had been injured in the Oakdale parking lot was not subject to the public-duty doctrine; he was lawfully present on state property during visiting hours, was an "invitee" of the state, and had a "special relationship" with it.  *Id.*

In *Summy v. City of Des Moines*, we decided that the public-duty doctrine did not apply to a claim brought by a golfer who was injured when struck by a ball hit by another golfer while on a municipal golf course.  708

N.W.2d 333, 335 (Iowa 2006), *overruled on other grounds by Alcala v. Marriott Int'l, Inc.*, 880 N.W.2d 699, 708 n.3 (Iowa 2016). The plaintiff's theory was that the golf course was negligently designed and maintained, so that a player on the fairway for the eighteenth hole was at unreasonable risk of being struck by a golf ball hit by a golfer teeing off at the first hole. *Id.* at 336. The court found that the doctrine did not apply "because the City's duty was one owed to invitees on the golf course, not to the public at large." *Id.* at 344.

Nearly two decades ago, in *Kolbe v. State*, we held that the public-duty doctrine foreclosed a claim against the state for issuing a driver's license to a driver who suffered from a serious vision condition and struck a bicyclist. 625 N.W.2d at 724–25. The driver received a license on a "discretionary basis" under which he was restricted from driving more than forty-five miles per hour. *Id.* at 724. We found that the licensing provisions were "for the benefit of the public at large" and there was no claim of a special relationship under the facts of the case. *Id.* at 729–30.

These are our most recent public duty cases. We have others. *See, e.g., Raas*, 729 N.W.2d at 448–49 (citing cases); *Sankey v. Richenberger*, 456 N.W.2d 206, 208–09 (Iowa 1990) (dismissing tort claims brought by shooting victims against police chief for failure to take action); *Donahue v. Washington County*, 641 N.W.2d 848, 852 (Iowa Ct. App. 2002) (affirming summary judgment granted to county on claim that it failed to investigate a biting dog); *Allen v. Anderson*, 490 N.W.2d 848, 856 (Iowa Ct. App. 1992) (affirming grant of summary judgment to the defendants in a case involving a tardy law enforcement response to a kidnapping).

2. *The inapplicability of the public-duty doctrine in cases where the governmental entity acts affirmatively and does so negligently.* In *Johnson*, we noted the distinction between nonfeasance and misfeasance. 913

N.W.2d at 266. *Johnson* involved a claim that the county had acted negligently in failing to cause the removal of a concrete embankment that was on private property and had been erected by a private property owner adjacent to the road. *Id.* at 259.

While affirming summary judgment in favor of the county, we rejected the plaintiff's assertion that applying the public-duty doctrine to her case would eliminate an individual's ability to sue when a governmental entity "negligently erects an obstacle directly in the path of motorists." *Id.* at 266. Quoting from a leading treatise on tort law, we explained that the "classic" public-duty doctrine case occurs when "the duty is imposed by a statute that requires the defendant to act affirmatively, and the defendant's wrongdoing is a *failure* to take positive action for the protection of the plaintiff." *Id.* (quoting 2 Dan B. Dobbs, Paul T. Hayden & Ellen M. Bublick, *The Law of Torts* § 345, at 375 (2d ed. 2011)). We reiterated our belief that "the limited resources of governmental entities—combined with the many demands on those entities—provide a sound justification for the public-duty doctrine" in cases involving nonfeasance. *Id.* However, we added, "This does not mean the same no-duty rule would protect that entity when it affirmatively acts and does so negligently." *Id.* at 267.

This distinction between affirmative conduct by the governmental entity and failing to prevent another party from doing harm is not unique to our caselaw or the Dobbs treatise. "Where the affirmative acts of a public employee actually cause the harm, the public duty doctrine does not apply." McQuillin § 53.18. "In practice, courts seem more likely to apply the public duty doctrine when a government employee negligently fails to act and allows harm to occur (nonfeasance) than when the employee negligently acts and causes harm (misfeasance)." Ryan Rich,

*Seeing Through the Smoke and Fog: Applying a Consistent Public Duty Doctrine in North Carolina After* Myers v. McGrady, 85 N.C. L. Rev. 706, 723 (2007). For example, "Washington cases rarely apply the public duty doctrine to protect affirmative acts by regulators and police." Michael Tardif & Rob McKenna, *Washington State's 45-Year Experiment in Governmental Liability*, 29 Seattle U. L. Rev. 1, 48 (2005). Similarly, based on a

> line of cases decided by the [Massachusetts] Supreme Judicial Court, § 10(j) [of the Massachusetts Tort Claims Act] is founded upon a misfeasance/nonfeasance distinction: a public employer will be held liable for actively creating a risk of harm that comes to pass, but will not be held liable for failing to prevent a risk of harm "not originally caused by the public employee," even where the employee has a statutory or contractual employment duty to act.

Kevin M. Barry, Note, *Brum v. Town of Dartmouth and the Public Duty Rule: Navigating an Interpretive Quagmire*, 41 B.C. L. Rev. 383, 412 (2000).

Although our cases prior to *Johnson* generally did not *talk* about a malfeasance/nonfeasance distinction, their *outcomes* support this distinction. In *McFarlin,* the plaintiffs' theory was that the state should have done more to protect boaters from a dredge pipe in the lake that another entity controlled and operated. 881 N.W.2d at 60. In *Raas,* the plaintiffs' theory was that the state should have protected them from two dangerous inmates. 729 N.W.2d at 449. That theory was allowed to proceed only as to the incident that occurred in the prison parking lot where the state had a special relationship to the plaintiff. *Id.* at 450. In *Kolbe,* the plaintiffs' theory was that the state should have denied a license to an unqualified driver. 625 N.W.2d at 726. In *Sankey,* the plaintiffs' theory was that the defendant should have stopped a shooting. 456 N.W.2d at 208.

Our distinction between affirmative actions and omissions comports with the special relationship exception to the public-duty doctrine, which renders a governmental entity liable for the violation of what would otherwise be a duty to the general public if a special relationship existed between the entity and the plaintiff that gave rise to a special duty of care toward the plaintiff. *See Cope v. Utah Valley State Coll.*, 342 P.3d 243, 252 (Utah 2014). This exception "serves a similar function to the tort principle that a private individual generally has no duty to act to rescue another from harm unless there is a special relationship that creates such a duty." *Id.* at 253. Accordingly, the special relationship exception makes sense only in the context of omissions in which a government actor had a duty to act and failed to do so. *Id.* at 252–53 (explaining the special relationship exception has no application to liability for "affirmative acts of public safety employees[, which] stems from the fact that the foreseeability of the harm, rather than the nature of the tortfeasor's relationship to the plaintiff, limits liability for affirmative acts causing harm").

We decided *Summy* on the ground that a special relationship existed between a golfer using a municipal golf course and the municipality. 708 N.W.2d at 335. However, we could potentially have decided that the public-duty doctrine did not apply for the alternative reason that the municipality designed, developed, and maintained the allegedly dangerous golf course. These were affirmative acts.

We recognize there is a gray area. Some cases can be characterized as examples of either misfeasance or nonfeasance. One could describe *Kolbe* as affirmative conduct to the extent the state granted a license to a driver, or as a failure to act because the state failed to conduct an adequate investigation that would have stopped an allegedly dangerous driver from driving. 625 N.W.2d at 724–25. What is clear is that we have generally

applied the public-duty doctrine when the allegation is a government failure to adequately enforce criminal or regulatory laws for the benefit of the general public, as in *Raas*, *Kolbe*, and *Sankey*, or a government failure to protect the general public from somebody else's instrumentality, as in *Johnson* and *Estate of McFarlin*. *Compare Raas*, 729 N.W.2d at 446, *and Kolbe*, 625 N.W.2d at 724–25, *and Sankey*, 456 N.W.2d at 208–09, *with Johnson*, 913 N.W.2d at 261, *and Estate of McFarlin*, 881 N.W.2d at 63.

This case does not fall into either category. The City erected the sewer box and the paved pathway and connected them to each other. They were not instrumentalities built, owned, operated, or controlled by anyone else. They were the City's. Here, a jury could find the City was affirmatively negligent in connecting the public pathway to the sewer box to give the sewer box the appearance that it was part of the public trail system. A jury could find that when the City connected the trail and the sewer box, it needed to take measures either to make the sewer box a safe part of the trail by adding guardrails or to warn pedestrians that the sewer box was not part of the public trail system.

In summary, we hold that the public-duty doctrine does not apply to this situation, and we need not address the plaintiffs' alternative claim that they had a special relationship with the City that meets an exception to the public-duty doctrine. The district court erred by granting the City's motion for summary judgment on this ground.

**B. The State-of-the-Art Defense.** In addition to the public-duty doctrine, the City sought and was granted summary judgment based on the state-of-the-art defense. Plaintiffs challenge the district court's application of the state-of-the-art defense under section 670.4(1)(*h*), which provides a city with immunity from claims of negligent design or construction of facilities or improvements built according to the accepted

standards at the time of construction and claims based on a city's failure to upgrade facilities to meet new standards. *Kellogg v. City of Albia*, 908 N.W.2d 822, 826 (Iowa 2018). Iowa Code section 670.4(1)(*h*) renders a municipality immune from liability for

> [a]ny claim based upon or arising out of a claim of negligent design or specification, negligent adoption of design or specification, or negligent construction or reconstruction of a public improvement as defined in section 384.37, subsection 19, or other public facility that was constructed or reconstructed in accordance with a generally recognized engineering or safety standard, criteria, or design theory in existence at the time of the construction or reconstruction. A claim under this chapter shall not be allowed for failure to upgrade, improve, or alter any aspect of an existing public improvement or other public facility to new, changed, or altered design standards.

In relevant part, section 384.37(19)'s definition of a "public improvement" includes "[s]anitary, storm and combined sewers." *Id.* § 384.37(19)(*a*). The statute defines a "sewer" as "structures designed, constructed and used for the purpose of controlling or carrying off streams, surface waters, waste or sanitary sewage." *Id.* § 384.37(22). Plaintiffs concede the sewer box met this definition when it was built circa 1930 but contend it no longer does because the City converted the sewer box into a recreational trail between 1980 and 1992. However, nothing in the record shows that the sewer box still does not operate as a sewer under the statutory definition despite its connection to the pathway. Thus, the sewer box is a public improvement under section 384.37(19).

Immunity under section 670.4(1)(*h*), which is commonly referred to as the state-of-the-art defense, has two purposes. First, the defense "alleviate[s] municipal responsibility for design or specification defects, as judged by present state of the art standards, when the original designs or specifications were proper at the time the public facility was constructed."

*Kellogg*, 908 N.W.2d at 826 (alteration in original) (quoting *Hansen v. City of Audubon*, 378 N.W.2d 903, 906 (Iowa 1985)). Second, it "instructs courts to measure a municipality's duty to avoid nonconstitutional torts 'by the "generally recognized engineering or safety standard, criteria, or design theory" in existence at the time of the construction or reconstruction.' " *Id.* (quoting *Connolly v. Dallas County*, 465 N.W.2d 875, 877 (Iowa 1991)).

Our past cases have held that the party claiming negligent design or construction has the burden of establishing the City failed to construct or reconstruct the public facility in accordance with the generally recognized engineering or safety standards at the time of the construction or reconstruction. *Felderman v. City of Maquoketa*, 731 N.W.2d 676, 678 (Iowa 2007); *Fischer v. City of Sioux City*, 695 N.W.2d 31, 34 (Iowa 2005); *Connolly*, 465 N.W.2d at 877 n.3. As plaintiffs noted in their appellate briefs and discussion on discretionary immunity in their memorandum of law in support of resistance to summary judgment, other forms of immunity that similarly serve as an affirmative defense place the burden on the party invoking the defense to prove its actions are entitled to immunity. *See, e.g.*, *Baldwin v. City of Estherville*, 915 N.W.2d 259, 280 (Iowa 2018) ("Because the question is one of immunity, the burden of proof should be on the defendant. Accordingly, to be entitled to qualified immunity a defendant must plead and prove as an affirmative defense that she or he exercised all due care to comply with the law." (Citation omitted)); *Doe v. Cedar Rapids Cmty. Sch. Dist.*, 652 N.W.2d 439, 446 (Iowa 2002) ("The burden is on the School to prove its actions are entitled to the shield of discretionary function immunity."); *Hughes v. Massey-Ferguson, Inc.*, 522 N.W.2d 294, 296 (Iowa 1994) (explaining the burden is on the manufacturer in claims arising from alleged defects in the design of a

product to show the product conformed to the state-of-the-art standards in existence at the time it was manufactured).  Nothing in our state-of-the-art defense caselaw explains why the burden is different from other types of immunity that serve as affirmative defenses.

Our original case placing the burden on the party challenging the state-of-the-art defense simply stated in a footnote that "[i]t was not defendant's burden to establish that [its design was proper under state-of-the-art standards] but, rather, was plaintiffs' burden to establish the contrary" without further explanation.  *Connolly*, 465 N.W.2d at 877 n.3.  Given the function of the state-of-the-art defense, placing the burden on the party challenging the defense is illogical because the defendant will normally have access to information regarding when the improvement was made.  The plaintiff will not.  Thus, it makes sense to require the defendant to come forward with proof that the improvement conformed to the state of the art rather than to require the plaintiff to require proof that it did not.

Immunity is the exception while liability is the rule.  When a party invokes an affirmative defense to avoid liability, that party should be forthcoming about why the defense applies rather than expecting the opposing party to seek out evidence to rebut that affirmative defense.  *See, e.g.*, *Anderson v. State*, 692 N.W.2d 360, 364 (Iowa 2005) (explaining which party bears the burden of proving an affirmative defense under the Iowa Tort Claims Act); *see also In re A.S.*, 906 N.W.2d 467, 475 (Iowa 2018) ("Ordinarily, the burden of proof on an issue is upon the party who would suffer loss if the issue were not established.") (quoting Iowa R. App. P. 6.904(3)(*e*)).  We disavow any language in our past cases to the contrary and place the burden on the party invoking the state-of-the-art defense to plead and prove it as an affirmative defense going forward.

The City maintains the sewer box has never been officially designated as a trail by the City, nor has the sewer box ever been upgraded or altered since its construction before 1930. Thus, the City argues the only safety standards to consider in its defense are those in existence around 1930, which plaintiffs do not dispute were met. Despite the City's claim that it has never designated the sewer box as a trail, plaintiffs presented evidence of a City-created map of Dankwardt Park that labeled the sewer box area "Sewer Trail." Plaintiffs also provide photographs of the trail that show the trail was flush with the pathway at the point of connection, providing no indication that the trail did not continue onto the sewer box.

Plaintiffs argue the City's lengthening of the pathway in Dankwardt Park to the edge of the sewer box between 1980 and 1992 was an "upgrade" or "alteration" of the sewer box that changed the nature of it into a recreational trail, thereby requiring the City to meet the recognized safety and engineering standards during that time period. We agree with plaintiffs that the City's connection of the pathway to the sewer box between 1980 and 1992 fundamentally altered the sewer box by connecting it to the pathway in Dankwardt Park. Accordingly, we must ask if there was a genuine issue of material fact as to whether the City met the engineering and safety standards in existence between 1980 and 1992 to determine whether the district court properly granted the City's motion for summary judgment based on the state-of-the-art defense.

Notably, the City provided no evidence that it met the engineering and safety standards in existence between 1980 and 1992 when it connected the pathway to the sewer box, relying heavily on the fact that

plaintiffs had the burden of proving the City had not met these standards.[2] The City merely declared that plaintiffs failed to show the City's alterations to the sewer box had not met the relevant standards. Understandably, the City did not have the burden to show the state-of-the-art defense under the law at the time. Yet, even considering this case under the prior law in which plaintiffs had the burden, plaintiffs provided enough evidence of the City's failure to meet these standards to at least survive summary judgment by showing a genuine issue of material fact.

Plaintiffs relied on the affidavit and reports of Thomas Rush, their professional engineering expert, to support their claim that the City's reconstruction of the pathway at some time between 1980 and 1992 did not meet the generally recognized safety and engineering standards in existence at that time. In conducting his report, Rush relied on the "Iowa Trails 2000" publication from the DOT and two publications from AASHTO. Rush's report notes the "Iowa Trails 2000" publication declares that "edge protection typically in the form of fencing is required on bicycle trails in areas where safety is a concern, such as locations where the land on either side of the trail drops off steeply." Similarly, Rush's report explains the AASHTO's recommendations that graded shoulder areas should be maintained or that physical barriers or rails are appropriate.

Although Rush's report relied on two undated publications and one Iowa DOT publication from 2000, we think his report created a factual issue regarding the safety standards to meet the standard we apply in the

---

[2]Bike paths have proliferated since the 1980s after Congress enacted the "Rails-to-Trails Act" and the resolution of court challenges thereto. James Lilly, *Rail-to-Trails Conversions: How Communities Are Railroading Their Way Out of Recession Towards Healthy Living*, 2 U. Balt. J. Land & Dev. 167, 168–69 (2013). Here, the summary judgment record is silent on whether the state-of-the-art standards for bike path construction changed between 1992 and 2000. On remand, the City will bear the burden to prove its state-of-the-art defense.

nonmoving party's favor in our review of summary judgment rulings. *See Skadburg v. Gately*, 911 N.W.2d 786, 791 (Iowa 2018) (noting we review summary judgment rulings by viewing the evidence "in the light most favorable to the nonmoving party," drawing "every legitimate inference in favor of the nonmoving party"). Rush's report identifies standards within at least eight years of the relevant time frame in this case, and the City seemingly did not meet those standards. Moreover, Rush also asserts the City could have taken specific steps to prevent this incident, including providing guardrails, warning trail users of the dangerous conditions, and closing the trail. These steps align with some of the standards Rush discusses. Rush's assertions provide enough evidence to at least raise a fact issue under our standard of drawing every legitimate inference in favor of plaintiffs as the nonmoving party. *See id.* Therefore, the district court erred in granting the City's motion for summary judgment ruling based on the state-of-the-art defense.

**IV. Conclusion.**

For the foregoing reasons, we reverse the district court's summary judgment dismissing this action and remand for trial on the merits.

**REVERSED AND REMANDED.**

All justices concur except Appel, J., who concurs specially.

**APPEL, Justice (concurring specially).**

I concur with the result in this case. I continue, however, to question the ongoing validity of the public-duty doctrine, which the City of Burlington seeks to apply in this case, after the enactment of the Iowa Municipal Tort Claims Act (IMTCA). *See Johnson v. Humboldt County*, 913 N.W.2d 256, 271 (Iowa 2018) (Wiggins, J., dissenting). To me, the public-duty doctrine is a variant of sovereign immunity, which was abolished by the IMTCA. In any event, because the majority agrees that the City was not entitled to summary judgment based upon public-duty doctrine, I concur in the result in this case.